THE STATE OF FLORIDA ex rel. EDWARD H. CLARKSON, *Relator*, v. H. B. PHILIPS, COUNTY JUDGE, *Respondent*.

Opinion filed Nov. 18, 1915.
Petition on rehearing denied Dec. 21, 1915.

1. A court will not listen to an objection made to the constitutionality of an act by a party whose right it does not affect and who has therefore no interest in defeating it.

2. A person who does not belong to a class alleged to be unlawfully discriminated against by a statute, cannot in judicial proceedings be heard to assail the constitutionality of the statute as it affects the class.

3. One cannot raise an objection to the constitutionality of a part of a statute, unless his rights are in some way injuriously affected thereby, or unless the unconstitutional feature renders the entire act void or renders the portion complained of inoperative.

4. The constitutionality of a provision of a statute cannot be tested by a party whose rights or duties are not affected by it, unless the provision is of such a nature that it renders invalid a provision of the statute that does affect the party's rights or duties.

5. It is the duty of the courts to enforce valid provisions of a statute; but a statutory provision that is clearly in conflict with organic law should not be enforced.

6. If a duly enacted statute contains provisions that are invalid because in conflict with organic law, and such invalid portions may be severed, and the remainder of the statute may then be made effective for the purpose designed, and will not cause results not intended by the Legislature, and it does not appear that the statute would not have been enacted without the invalid portions, the invalid portions of the Act should be disregarded and the valid portions enforced if it can be done to effectuate the legislative intent.

7. It is presumed that the law-making power intended a valid, constitutional enactment.

8. Only the valid legislative intent becomes the law to be enforced by the courts.

9. The legislature is presumed to act within its powers, and its law-making discretion within its powers is not subject to review by the courts.

10. The State has a wide discretionary power in imposing license taxes, and unless there can be no substantial basis for discrim-

inations made in classifications and in fixing the amount of license taxes, so that such discrimination must be regarded as purely arbitrary and unreasonable under every conceivable condition in practical affairs, the courts will not interfere with legislative regulations of such matters.

11. The burden is on one who complains that he has been denied the equal protection of the laws to sustain the complaint.

12. The power and discretion of the legislature to control and regulate the subject of hunting game is not limited by the organic law, and the subject regulated may be as restricted in manner and extent as the legislature deems advisable; but the regulations should affect alike all persons similarly situated and conditioned with reference to the particular regulations.

13. The discretion of the legislature in classifying those who are to be affected by a regulation for the protection of game, will not be disturbed by the courts where the classification has some just, fair and practical basis in real differences with reference to the subject regulated; and all doubts will be resolved in favor of the validity of a statute.

14. The provisions of Chapter 6969 requiring residents of the State to pay a license tax of three dollars to hunt game in each county of the State other than the county of residence, and requiring residents of a county to pay only one dollar as a license tax for hunting game in such county, are not on their face purely arbitrary and unlawful.

15. Sections 26, 27, 28, 29, 30, 31 and 32 of Chapter 6969 Acts of 1915 must be eliminated as clearly violative of the provisions of the constitution relative to the appointment of officers and fixing their compensation, but such elimination will not render the entire act inoperative.

This is an original mandamus proceedings in this court.

Demurrer sustained.

*John E. & Julian Hartridge,* for Relator;

*T. F. West,* Attorney General, for Respondent.

WHITFIELD, J.   The alternative writ of mandamus issued from this court alleges that the relator, Edward H. Clarkson, is a citizen and resident of the State of Florida, and has been such for more than five years last past; that by virtue of Section 25 of Chapter 6535 Acts of 1913, any person who has been a bona fide resident of the State of Florida for one year then passed, may procure a hunter's license for himself or herself by filing his or her affidavit with the county judge of the county in which he or she resides, stating his or her age, place of residence, postoffice address, color, color of his or her hair and eyes and the fact whether her or she can write his or her name, and by paying one dollar to said county judge; that petitioner on October 15, 1915, filed his affidavit with the county judge in and for Duval county, Florida, the county in which he resides, stating his age, place of residence, postoffice address, color, color of his hair and eyes, and stating that he could write his name, and had been a bona fide resident of the State for fifteen years, and tendered to the county judge one dollar and demanded a hunter's license, and was by virtue of said section 25 of Chapter 6535 entitled to have a hunter's license issued to him, giving him the privilege of hunting in and throughout Duval county, Florida; that the county judge refused to issue said license to petitioner, and assigned as a reason therefor that under and by virtue of Section 19 of Chapter 6969 Acts of 1915, he

was not authorized or empowered to grant a hunter's license under the laws of 1913, and that the affidavit filed did not show that petitioner was and had been a resident of Duval County, Florida, for six months then last past, that Chapter 6969 Acts of 1915, pretending to repeal Chapters 6534 and 6535 Acts of 1913, is null and void and inoperative by reason of the fact that said act was intended for the protection and prevention of the game of Florida, whereas, because of the unconstitutionality of Sections 19, 20 and 22 of Chapter 6969 Acts of 1915, and of sections 26, 27, 28, 29, 30, 31, 32 and 38 of said Chapter, as alleged in the writ, Chapter 6969 does not afford any protection to the game of the State or accomplish in any way such purpose, but is wholly without force, that is to say, sections 19, 20 and 22 violate section 20 of Article 3 of the State Constitution in that it is a criminal statute and is not uniform in its operation; section 22 unjustly discriminates in that it permits resident confederate veterans, pensioners, to hunt without licenses; that under and by virtue of section 19, that if a person desiring to hunt had been born and raised in a county in the State of Florida, but moved out of that county to an adjoining county three months before the hunting season opened, under said Chapter 6969 he could not be granted a license, not having a six months residence in the county, and under and by virtue of section 20 a discrimination is made in that a person is allowed to obtain a license in a county other than that in which he has lived six months by getting a certificate of the county judge of the county in which the applicant resides, that he is a bona fide resident of the county and State of Florida, and paying the judge a fee of $3.00; that under section 20 of said act a person who has been twelve months

in the State may procure a license in any county in the State other than that in which he is a resident, and cannot procure a license in the county in which he lives unless he has resided there for six months previous to his application for a license, and is discriminatory and gives an advantage to one citizen that is not possessed by a citizen residing in the State for twelve months, but who has not resided in the county in which he desires a license for six months, if that county be the county of his residence; that sections 26, 27, 28, 29, 30, 31, 32 and 38 all relate to the game warden and his compensation and duties, and that the entire act taken in connection with the sections mentioned show that said game warden is an officer and is given the powers of a sheriff, whereas he is neither elected by the people nor appointed by the Governor, and there can be, constitutionally, no officers except those appointed by the Governor or elected by the people. The command of the writ is that the respondent do receive from the relator one dollar tendered by him, and to issue to him a county hunter's license under Section 25, Chapter 6535 Acts of 1913, or show cause for not doing so.

A demurrer to the alternative writ, having the effect of a motion to quash the writ, challenges the right of the relator on this writ to assail the Act of 1915 as being unconstitutional, and asserts the validity of the Act and of the sections assailed.

A court will not listen to an objection made to the constitutionality of an act by a party whose right it does not affect and who has therefore no interest in defeating it. Cooley's Const. Limitations (6th ed.) 196; Supervisors v. Stanley, 105 U. S. 305; Clark v. Kansas City, 176 U. S. 114, 20 Sup Ct. Rep. 284. A person who does

not belong to a class alleged to be unlawfully discrim-inated against by a statute, cannot in judicial proceed-ings be heard to assail the constitutionality of the statute as it affects the class. See Mutual Film Corporation of Missouri v. Hodges, Governor, 236 U. S. 248,     Sup. Ct. Rep.     ; 6 R. C. L. 90; Hampton v. St. Louis, I. M. & S. R. Co., 227 U. S. 456, text 469, 33 Sup. Ct. Rep. 263.

One cannot raise an objection to the constitutionality of a part of a statute, unless his rights are in some way injuriously affected by the statute, or unless the consti-tutional feature renders the entire act void. Gherna v. State,     Arizona     , 146 Pac. Rep. 494.

The constitutionality of a provision of a statute can-not be tested by a party whose rights or duties are not affected by it, unless the provision is of such a nature that it renders invalid a provision of the statute that does affect the party's rights or duties. Stinson v. State, 63 Fla. 42, 58 South. Rep. 722.

"Chapter 6969, Acts of 1915.

"AN ACT Declaring the Ownership of Game and Birds in the Several Counties of the State; to Provide for the Protection of same; Providing Open and Closed Seasons; Providing for Hunter's Licenses, and for Game Wardens, and Repealing Chapters 6534 and 6535, Acts of 1913, Relating to the Same Subjects.

"Section 1. Ownership and Title.—The ownership and title to all wild birds and game in the State of Florida are hereby vested in the respective counties of the State, for the purpose of regulating the use and disposition of the same."

"Sec. 19. Any person who has been a bona fide resi-dent of the State for twelve months and of the county

VOL. 70, JUNE TERM, 1915.          347

State ex rel. Clarkson v. Philips.—Opinion of Court.

for six months, then last past, may procure a license hereby designated as "Resident County License," by filing application with the County Judge of the county in which the applicant resides, stating applicant's place of residence and postoffice address, age, color, sex, color of hair and eyes, and, paying to such County Judge the sum of one ($1.00) dollar.

"Sec. 20.   Any person who has been a bona fide resident of the State for twelve months, then last past, may procure a hunter's license in any other county than that of his residence, which license is hereby designated a "Non-Resident County License," by filing application with the County Judge of the county in which the applicant desires to hunt, accompanied by the certificate of the County Judge of the county in which the applicant resides stating that the applicant is a bona fide resident of said county and of the State, and by paying the said County Judge of the county in which the applicant desires to hunt, the sum of three ($3.00) dollars."

"Sec. 22.   No license shall be required of persons hunting within the limits of the voting precinct in which they actually reside, or of resident Confederate Veterans who are entitled to the payment of a pension under the laws of Florida."

"Sec. 26.   For the purpose of carrying out and enforcing the provisions of this Act, immediately after its passage and approval, the Board of County Commissioners of the several counties of the State shall employ a fit and competent person, resident of the county, as County Game Warden, who shall be such Game Warden unless sooner removed for cause, until Tuesday after the first Monday in January, A. D. 1917, and, the Board of

County Commissioners shall at the time of making such employment fix the salary to be paid such game warden. The said respective Boards of County Commissioners shall at their regular meeting to be held in November, 1916, and every two years thereafter, employ such a person for such County Game Warden as shall have been recommended by nomination in the preceding primary election, the term of such employment to begin on the Tuesday after the first Monday in January, 1917, and all Game Wardens so employed shall hold office for the term of two years, unless sooner removed for cause, or until their successors are qualified. In case of removal of a County Game Warden, the Board of County Commissioners shall at once employ another to serve during the unexpired term of the one removed, unless also removed for cause in which event like procedure shall he had.

"Sec. 27. The County Game Wardens shall each, before entering upon the discharge of their duties, enter into bond in the sum of one thousand ($1,000.00) dollars, with two or more sureties, payable to the Governor of the State and to be approved as are the official bonds of County officers, conditioned that he will well and faithfully perform the duties enjoined upon him by law, and shall also take and subscribe the oath of affirmation required by the Constitution of the State.

"Sec. 28. The salary of the County Game Warden appointed under this Act shall be fixed by the Board of County Commissioners of their respective counties at their first meeting after the passage and approval thereof, and shall not be changed during the term of office of the appointee, and thereafter such salary shall be fixed by

said Board on or before the beginning of each term of office; such salaries shall not be less than one hundred nor more than six hundred dollars per annum, and shall be payable monthly by the Board of County Commisisoners out of the Fine and Forfeiture Fund. The said salaries shall be in addition to the fees herein provided to be paid such Game Warden from the money received from licenses and fines.

"Sec. 29. The County Game Warden may at his discretion appoint a deputy warden in each election precinct of the county upon such terms and salary or commission as may be mutually agreed upon, such salary or commission to be payable by the County Game Warden, and in no case chargeable against the county. The deputy wardens shall hold office during the term of office of the County Warden making the appointment, unless by him sooner removed for cause.

"Sec. 30. The County Game Warden, and his deputies shall enforce all laws now enacted or that may be enacted for the protection, propagation and preservation of game animals and birds in the counties of this State, and shall prosecute all persons who violate such law; and he shall at any and all times seize any and all birds and animals that have been caught or killed at any time, in a manner, or for a purpose, or in possession, or which have been shipped, contrary to the game laws of this State.

"Sec. 31. The County Game Warden and his deputies may serve criminal process as sheriffs and constables or may arrest without warrant any person or persons violating the provisions of this Act.

"Sec. 32. The County Game Warden and his deputies shall be allowed for making arrests for violations of

this Act, the same fees as sheriffs, and the same mileage for conveying prisoners, the same to be taxed as costs in case of conviction, but no fee or mileage shall be allowed in case of acquittal. Each County Warden shall also be allowed and paid an amount equal to one-third of all fines and penalties collected in the county, imposed for violations of this Act, in the cases in which he or his deputies furnish the evidence upon which conviction is had, which sums of money shall be paid by the Board of County Commissioners out of the Fine and Forfeiture Fund."

"Sec. 38. Officer Failing to Perform Duty.—Any official, officer, or warden, who shall fail to perform an act, duty, or obligation enjoined upon him by the provisions of the game laws of this State, shall be punished by a fine of not less than fifty dollars nor more than two hundred."

It is the duty of the courts to enforce valid provisions of a statute; but a statute that is clearly in conflict with organic law should not be enforced. If a duly enacted statute contains provisions that are invalid because in conflict with organic law, and such invalid portions may be severed, and the remainder of the statute may then be made effective for the purpose designed, and will not cause results not intended by the Legislature, and it does not appear that the statute would not have been enacted without the invalid portions, the invalid portions of the Act should be disregarded and the valid portions enforced if it can be done to effectuate the legislative intent. State v. Atlantic Coast Line R. Co., 56 Fla. 617, 47 South. Rep. 969; State v. Tampa Waterworks Co., 56 Fla. 858, 47 South. Rep. 358, 19 L. R. A. (N. S.) 183; El Paso & N. E. Ry Co. v. Gutierrez, 215 U. S. 87, 30 Sup. Ct.

VOL. 70, JUNE TERM, 1915.          351

State ex rel. Clarkson v. Philips.—Opinion of Court.

Rep. 21.   It is presumed that the lawmaking power intended a valid, constitutional enactment.   Only the valid legislative intent becomes the law to be enforced by the courts.   The legislature is presumed to act within its powers, and its lawmaking discretion within its powers is not subject to review by the court.   Harper v. Galloway, 58 Fla. 255, 51 South. Rep. 226; Dutton v. Priest, 67 Fla. 370.

Section 25 of Chapter 6535 and Section 19 of Chapter 6969 differ mainly in that under the Act of 1913 the applicant is not required to state that he has been a bona fide resident "of the county for six months then last past," while under the Act of 1915 he is so required.

If the statute unlawfully discriminates against citizens of the State who have not been residents of a county for six months, because of removals from one county to another or elsewhere, the relator does not show by the writ that he is one of the class so affected, but on the contrary it was admitted at the argument on the demurrer in this original proceeding in this court, that the relator had been a resident of Duval county for some years.

In so far as the relator's rights are affected by section 19 of Chapter 6969 Acts of 1915, he, being a resident of Duval county for six months, gets no less benefits than he would have under section 25, Chapter 6535 Acts of 1913. Yet if section 19 is invalid as it affects residents of the State for twelve months who have not been for six months residents of the county in which they may reside at any particular time, and such invalidity renders the entire section invalid, or if any of the other sections of Chapter 6969 alleged in the alternative writ to be unconstitutional renders section 19 or the whole act unconsti-

tutional, the relator in his status as shown by the writ may question their validity; for if section 19 is invalid of itself, or if it is invalid because of other provisions of the act, the relator is entitled to have it so declared.

In determining whether a classification for purposes of legislative regulation is in effect a denial of the equal protection of the laws in violation of the Fourteenth Amendment to the Federal Constitution, the following rules have been adopted by the Supreme Court of the United States: "1. The equal protection clause of the Fourteenth Amendment does not take from the State the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary. Bactel v. Wilson, 204 U. S. 36, 41; Louisville & Nashville R. R. Co. v. Melton, 218 U. S. 36; Ozan Lumber Co. v. Union County Bank, 207 U. S. 251, 256; Munn v. Illinois, 94 U. S. 113, 132; Henderson Bridge Co. v. Henderson City, 173 U. S. 592, 615; Lindsley v. Natural Carbonic Gas Company, William S. Jackson, Attorney General of the State of New York

et al., 220 U. S. 61, 31 Sup Ct. Rep. 337; Peninsular Industrial Ins. Co. v. State, 61 Fla. 376, 55 South. Rep. 398; Dutton v. Priest,· 67 Fla. 370. ·

No question of interstate commerce arises in this case. License taxes are not required to be equal or uniform, but they can not lawfully be imposed so as to deny the equal protection of the law. The State has a wide discretionary power in imposing license taxes, and unless there can be no substantial basis for discriminations made in classifications and in fixing the amount of license taxes so that such discriminations must be regarded as purely arbitrary and unreasonable under every conceivable condition in practical affairs, the courts will not interfere with legislative regulations of such matters. Ferguson v. McDonald, 66 Fla. 494, 63 South. Rep. 915; Singer Sewing Machine Co. v. Brickell, 233 U. S. 304. Sup. Ct. Rep.     ; Ohio River and Western Railway Co. v. Ditty, 232 U. S. 576,     Sup. Ct. Rep.     ; Metropolis Theater Co. v. City of Chicago, 228 U. S. 61, 33 Sup. Ct. Rep. 441; Bradley v. City of Richmond, 227 U. S. 477, 33 Sup. Ct. Rep. 318. The burden is on one who complains that he has been denied the equal protection of the laws to sustain the complaint. Peninsular Casualty Co. v. State, 68 Fla. 411, 67 South. Rep. 165.

In determining whether any portions of the act complained of renders the whole act or section 19 invalid, the rights of the relator, as a resident citizen of the State, in the wild game in the State, should be considered.

"Under the Common Law of England the title to animals *ferae naturae* or game is in the sovereign for the use and benefit of the people, the killing or taking and use of the game being subject to governmental control and

regulation for the general good. The power to control and regulate the killing and use of game was vested in the colonial governments of America and passed with the title to game in its natural condition to the several States as they became sovereigns, for the use and benefit of all the people of the States respectively, subject to any provision of the Federal constitution that may be applicable to such control and regulation."

"The Constitution of the State does not forbid the passage of special or local laws upon the subject of game, and it contains no express provision relative to game; therefore the legislature may by a duly enacted law make any provision within its discretion for the preservation and conservation of the game in the State for the use and benefit of the people of the State, by regulating the taking or killing and use of certain or all kinds of game in any part of the State and during any periods, where such laws do not deny to any one having rights in the premises the due process of law or the equal protection of the laws that are guaranteed to all persons by the State and Federal constitutions. See Blackstone's Com. 394, 410; Freund on Police Power, Chap. 419; Geer v. Connecticut, 161 U. S. 519, 16 Sup. Ct. Rep. 600; 3 Cyc. 306."

"The power and discretion of the legislature to control and regulate the subject of hunting game is not limited by the organic law, and the subject regulated may be as restricted in manner and extent as the legislature deems advisable; but the regulations should affect aliike all persons similarly situated and conditioned with reference to the particular regulations. Classifications of persons may be in connection with the regulations, but such classifica-

tions should have some just relation to real differences with reference to the subject regulated, and should not be unjustly discriminatory or merely arbitrary. If this rule is not observed, classifications of persons in connection with the regulation of the hunting of game may deny to some residents of the State the equal protection of the laws. See Seaboard Air Line Ry. v. Simon, 56 Fla. 545, 47 South. Rep. 1001, 20 L. R. A. (N. S.) 126; King Lumber Co. v. Atlantic Coast Line Ry., 58 Fla.     , 50 South. Rep. 509; Hayes v. Walker, *supra;* Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 Sup. Ct. Rep. 431; State v. Patterson, 50 Fla. 127, 39 South. Rep. 398."

"While there may be no absolute private property right in game in its natural condition, and while the State may by statute regulate the use of game in any manner and to any extent desired by the lawmaking power, yet the beneficial use of the game in the State belongs to all the people of the State, and a regulation that unjustly discriminates against any of the people of the State may in effect be a denial of the equal protection of the laws to those so unjustly discriminated against. The legislature in protecting game may in its discretion limit a statute in the extent and purpose of its operation, but the regulation must operate upon all persons alike under practically similar conditions and circumstances. The discretion of the legislature in classifying those who are to be affected by a regulation for the protection of game will not be disturbed by the courts where the classification has some just, fair and practical basis in real differences with reference to the subject regulated and all doubts will be resolved in favor of the validity of a statute. See State v. Sherman,     Wy.     , 105 Pac. Rep. 299;

Hays v. Walker, *supra;* King Lumber Co. v. Atlantic Coast Line Ry., *supra.* But when a statute designed for the protection of game, by its plain terms excludes from its benefits a portion of the residents of the State, or imposes upon some of the residents of the State burdens not put upon other residents of the State with reference to the subject regulated, and there appear to be no real differences in conditions with reference to the regulation to fairly justify the classification as made, the statute may in effect deny to residents of the State the equal protection of the laws in violation of the fourteenth amendment of the Federal Constitution. See Ex parte Sohncke, 148 Cal. 262, 82 Pac. Rep. 956, 2 L. R. A. (N. S.) 813, 113 Am. St. Rep. 236, 7 Am. & Eng. Anno. Cas. 475; Seaboard Air Line Ry. v. Simon, *supra."* Harper v. Galloway, 58 Fla. 255, 51 South. Rep. 226; Ex parte Crosby,     Nev.    , 149 Pac. Rep. 989.

In Harper v. Galloway it was held that a statute was invalid as denying the equal protection of the laws, wherein it gave to residents of Marion County certain privileges with reference to game in that county that were denied to residents of other counties of the State while citizens of Marion County were not denied in other counties the same privileges as to game therein as residents of such counties had.

The purported vesting of the ownership and title to all wild birds and game in the State in the respective counties, may be unimportant in so far as the bare legal title is concerned, if the provisions of the act "regulating the use and disposition of the same," do not in effect materially impair the rights of "all the people of the State" therein.

In so far as the provision of Section 19 requiring an applicant for a resident county license to have been a resident "of the county for six months, then last past" may operate to deny to any *bona fide* resident of the State for twelve months," a right to a license, it may be disregarded as being an invalid denial of the equal protection of the laws. Section 19 may stand with the invalid portion eliminated. This obviates the objection to section 20, except as to the license tax of $3.00 that is required of residents of other counties of the State, while residents of the county pay only one dollar license tax.

The Legislature may have contemplated circumstances that may arise in enforcing the prescribed regulations, that would justify the difference in the amount of the license tax, and it does not on the showing here made and the consideration here required clearly appear beyond all reasonable doubt that the discrimination has no lawful basis whatever and is wholly arbitrary and oppressive upon residents of the State who desire.to hunt in counties other than that of their residence the game in which they have a qualified property interest in common with all the people of the State.

Under the constitution of this State the expenses of prosecutions for crime are borne by the county where the crime is committed. Violations of the statute are made a crime and are punishable as such. As the violations occur in counties where the game is, and as the expenses of prosecutions are borne by the county, it seems reasonable that persons from other counties should pay a larger license tax. The license tax requirement affects alike all residents of the State who desire to hunt in a county other than the one in which they reside. The bur-

den is upon the relator to show that the statute denies him the equal protection of the laws. He has not done so. This statute does not in effect forbid a resident of the State to hunt in a county in which he does not reside as in State v. Hill, 98 Miss. 142, 53 South. Rep. 411. In Lewis v. State, Ark. , 161 S. W. Rep. 154, the decision was controlled by a constitutional provision that the Legislature "shall not grant to any citizen or class of citizens privileges or immunities which on the same terms, shall not equally belong to all citizens." There is no such provision in our constitution, and the relator has not shown that the discrimination made in this statute as to licenses is so arbitrary as to deny to him the equal protection of the laws. It may be more expensive to regulate hunters from other counties and the game may be a greater burden to the counties where they are. The relator has not shown that there can be no just basis for the difference in the license taxes, and he does not show he desires to hunt in any county except that of his residence.

The objection to section 22 that it discriminates in favor of Confederate veterans, is not argued, and as the effect of the section may be negligible the question as to it is treated as abandoned.

Sections 26, 27, 28, 29, 30, 31 and 32 must be eliminated as clearly violative of the provisions of the constitution requiring such officers to be appointed by the Governor or elected by the people and their compensation to be fixed by law. State ex rel. Clyatt v. Hocker, 39 Fla. 477, 22 South. Rep. 721; Board of Commrs. of Hillsborough County v. Savage, 63 Fla. 337, 58 South. Rep. 835. But such elimination will not necessarily render the entire act inoperative. It may be enforced by other officers, such as the sheriffs and their deputies.

It is apparent that the act is a general and not a local or special law, therefore section 38 does not violate sections 20 and 21 of Article III of the constitution forbidding special or local laws for the punishment of crime or misdemeanor, even if the purpose of the Act were to define and provide a penalty for a crime instead of being as it is a general State regulation for the protection of game with the imposition of a penalty as an incident to the regulation. If sections 16 and 17, to which no objection is made, be invalid as not included in or properly connected with the subject expressed in the title, they may be disregarded without destroying the act, or section 19. It does not clearly appear that sections of the act not assailed which provide for the preservation of game and for the issuing of hunting licenses by the County Judge would cause results contrary to the main purposes of the act, or that the provisions not assailed would not have been enacted without the provisions that may be treated as inoperative. It is quite evident that the main purposes of the act are the preservation and protection of game and the issuing of hunter's licenses in each county where hunting is done. Other provisions are merely incidental to these main purposes of the act, and if they fail, the essential portions of the act, with the invalid portions thereof as eliminated, may be made effective to accomplish the main legislative intent.

As the assumed invalid portions of the act do not necessarily render the entire act, or section 19 thereof, inoperative for any useful purpose as intended, section 19 with the stated elimination therefrom remains opera-

tive. See Co. Com'rs v. Savage, 63 Fla. 337, 58 South. Rep. 835; 23 Fla. 620; 21 Fla. 669.

The demurrer to the alternative writ is sustained.

TAYLOR, C. J., and COCKRELL and ELLIS, JJ., concur.

SHACKLEFORD, J., absent on account of illness.

## On Rehearing.

PER CURIAM. In a petition for rehearing it is stated in effect that the court failed to consider the validity, the intent and the effect of section 1 of Chapter 6969, asserted to have been passed not as a revenue act or as a police regulation but upon the legal theory of the ownership of the game by the respective counties and making the license taxes imposed merely incidental to the protection of the game; and failed to consider that the important part of the act are the provisions for officers having especially in charge the enforcement of the act, and that to allow the valid sections of the act to stand would accomplish a result not intended by the Legislature; and failed to consider the validity and effect of sections 18 and 39 and a portion of section 25 of the act; and failed to consider and define the term "bona fide resident" as used in sections 19 and 20, and to consider that the elimination of portions of the act leaves the game without the special protection sought to be given by the act, and does not revive other laws expressly repealed by section 39, and to consider that the main purpose of the act is the preservation and protection of game and not the incidental issuing of hunting licenses in each county where hunting is done, and to consider that the invalid portions neces-

VOL. 70, JUNE TERM, 1915.          361

State ex rel. Clarkson v. Philips.—Opinion of Court.

sarily render the entire act inoperative, and failed to consider whether the relator as a resident citizen of the State has a right to have a license issued to him to hunt in any county within the State. Some of these matters were not presented by counsel but all of them were considered by the court.

Though the relator was not asserting a right to a license in any county except the one in which he resides, the opinion indicates the rights of all *bona fide* residents of the State to obtain licenses to hunt in any county of the State. There was nothing in the pleadings calling for a definition of a *"bona fide* resident." The opinion expressly states that the main purposes of the act are the preservation and protection of game and the issuing of hunter's licenses in each county where hunting is done; and this determination is clearly right in view of the title and the language of the act considered alone or in connection with previous laws on the subject. It is also clear that the act intended to provide special officers to enforce the provisions of the act; but though this portion of the act is violative of the constitution and therefore inoperative, the other portions of the act are not thereby rendered inoperative, since as distinctly held, the provisions ·of the act may be enforced by the established authority of the county officers. The portion of section 25 relating to the compensation of officers attempted to be provided for necessarily falls with the inoperative sections relating to such attempted officers.

The fact that section 18 provides that fines and penalties and forfeitures under the act shall go into the fine and forfeiture fund of the county and that half of the fines and penalties shall be paid witnesses, does not necessarily render illegal the requirement that a license tax

of three dollars shall be paid by residents of other counties,· such fines and penalties are only a portion of the fund, the tax payers of the county being burdened with the maintenance of the fund.

The act is regarded as a police regulation for the protection of the game in the State, for the benefit of the whole people of the State; and, as expressly held in the main opinion, the provision of section 1 as to the vesting of the bare legal title in the counties, is not material in view of the purpose of the act to protect the game for the people of the State, the unlawful discriminations as to time of residence in a county being eliminated as inconsistent with the rights of all the residents of the State.

Section 39 repeals Chapters 6534 and 6535, and all other inconsistent laws, but this does not destroy the effectiveness of the sections of the act held to be operative, nor does the elimination of the invalid portions of the act accomplish a result of primal consequence that was not intended by the Legislature. A consideration of the title or the body of the act does not show that its main and essential purpose was to establish game wardens to protect game, but to protect game with a change in the method of issuing license that would be fairer to the counties in which game is found, the provision as to game wardens being not a primary purpose of the act.

The net proceeds of license taxes collected  are required to be paid into the county school fund, but on the pleadings in this case it is not material whether the act is or is not in part a revenue measure or whether revenue

is or is not a mere incident to the regulations of the statute respecting the taking of game in the State.

A rehearing is denied.

TAYLOR, C. J., and COCKRELL, WHITFIELD and ELLIS, JJ., concur.

SHACKLEFORD, J., takes no part.