99 So.2d 568 (1957)
John G. MATTHEWS, Appellant,
v.
STATE of Florida, Appellee.
Supreme Court of Florida.
November 27, 1957.
Rehearing Denied December 13, 1957.
Albert Datz, Jacksonville, for appellant.
Richard W. Ervin, Atty. Gen., and Odis M. Henderson, Asst. Atty. Gen., for appellee.
PER CURIAM.
Affirmed.
TERRELL, C.J., and THOMAS, THORNAL and O'CONNELL, JJ., concur.
ROBERTS and DREW, JJ., dissent.
ROBERTS, Justice (dissenting).
Appellant was charged with a violation of Sec. 847.01, Fla. Stat. 1955, F.S.A., by exhibiting obscene pictures to a 12-year-old girl, was tried by the jury and found guilty. He has appealed from the judgment of conviction.
Section 847.01, supra, provides that
"Whoever imports, prints, publishes, exhibits, displays, sells or distributes any book, pamphlet, ballad, printed paper, stereopticon, moving picture, slide or film, or other thing, containing obscene language or any obscene prints, figures, pictures or descriptions manifestly tending to the corruption of the morals of youth, * * * shall be punished *569 by imprisonment in the state prison * * *"
Shortly after appellant's conviction the United States Supreme Court in Butler v. State of Michigan, 352 U.S. 380, 77 S.Ct. 524, 525, 1 L.Ed.2d 412, held unconstitutional, as repugnant to the due process clause of the Fourteenth Amendment to the federal constitution, a Michigan statute, Comp.Laws 1948, § 750.142, substantially similar to Sec. 847.01, supra. Stating that the accused was convicted because the Michigan statute "made it an offense for [the appellant] to make available for the general reading public (and he in fact sold to a police officer) a book that the trial judge found to have a potentially deleterious influence upon youth," the court, speaking through Mr. Justice Frankfurter, said:
"We have before us legislation not reasonably restricted to the evil with which it is said to deal. The incidence of this enactment is to reduce the adult population of Michigan to reading only what is fit for children. It thereby arbitrarily curtails one of those liberties of the individual, now enshrined in the Due Process Clause of the Fourteenth Amendment, that history has attested as the indispensable conditions for the maintenance and progress of a free society."
It should be noted that by Ch. 57-779, Acts of 1957, the Legislature has amended Sec. 847.01, supra, undoubtedly for the purpose of curing the constitutional infirmity found by the United States Supreme Court to exist in the Michigan statute, which, as noted, is substantially similar to the Florida statute. But the amended statute is not, of course, before us, since the appellant was convicted under Sec. 847.01, Fla. Stat. 1955, F.S.A., prior to its amendment in 1957.
Understandably, the appellant here contends that Sec. 847.01, supra, is vulnerable to attack on the same constitutional ground by which the Michigan statute fell. It is contended on behalf of the State that the appellant's objection in this respect comes too late since the constitutional question was not raised in the lower court. But this court will review and will correct on appeal an error of a "fundamental nature" even though timely objection was not made in the lower court. See Hamilton v. State, Fla. 1956, 88 So.2d 606. Clearly, a person who is subjected to a punishment not authorized by any law has suffered an invasion of a fundamental right; and if the statute under which he is convicted is wholly invalid, it is as though it had never been enacted. At least where a statute is unconstitutional on its face, the appellate court should not decline to consider the constitutional question even though raised for the first time on appeal. Cf. Ellis v. State, 1917, 74 Fla. 215, 76 So. 698, where, however, the court declined to consider the question of the validity of a statute "not patently in conflict with organic law" in a similar situation.
If Sec. 847.01, supra, must be interpreted as was the comparable Michigan statute, then it is "patently" in conflict with the federal constitution, since this court has many times held that it will be bound by the decisions of the United States Supreme Court where the interpretation of the federal constitution is involved. See Miami Home Milk Producers Ass'n v. Milk Control Board, 1936, 124 Fla. 797, 169 So. 541; House v. State, 1937, 130 Fla. 400, 177 So. 705; Williams v. Pollock, 1943, 153 Fla. 338, 14 So.2d 700.
We have considered the statute in the light of our duty to give to a statute an interpretation that will be valid where the statute is reasonably susceptible to two interpretations  one valid and the other invalid. And recognizing that the appellant, unlike the accused in Butler v. State of Michigan, supra, is in no position to contend that his personal rights under the federal constitution have been invaded unless the entire statute is invalid, we have considered the statute in the light *570 of the doctrine of partial invalidity and under the rule that "One cannot raise an objection to the constitutionality of a part of a statute, unless his rights are in some way injuriously affected thereby, or unless the unconstitutional feature renders the entire act void or renders the portion complained of inoperative." State ex rel. Clarkson v. Philips, 1915, 70 Fla. 340, 70 So. 367, 369. See also State ex rel. Buford v. Shepard, 1922, 84 Fla. 206, 93 So. 667; Ex parte Smith, 1930, 100 Fla. 1, 128 So. 864; Stinson v. State, 1912, 63 Fla. 42, 58 So. 722; McSween v. State Live Stock Sanitary Board, 97 Fla. 750, 122 So. 239, 65 A.L.R. 508.
It may be that the Legislature intended, when it passed this Act in 1868, that it ought to and would be enforced only when the prohibited matter was handled or dealt with "in any manner that would manifestly tend to corrupt the morals of youth", as here contended on behalf of the State. A similar intention was expressed by Lord Campbell in sponsoring, eleven years earlier, what is known as Lord Campbell's Act of 1857 (20 and 21 Vict.), which authorized the seizing of obscene literature in England. See Bantam Books, Inc. v. Melko, 1953, 25 N.J. Super. 292, 96 A.2d 47, 56, in which the writer points out that in a little more than a decade Lord Campbell's intentions were "perverted," (and which contains, besides, an excellent discussion of the history of literary obscenity). It suffices to say that Sec. 847.01 does not expressly so limit its impact and this court is not authorized to read into the statute such a limitation. As did the Michigan trial court and the United States Supreme Court in interpreting a similar statute, we can only conclude that the Act, by its terms, establishes as a standard for literary obscenity prohibited by the statute the "potentially deleterious influence upon youth" of the published and printed matter designated therein. As stated in the Butler case, "Surely, this is to burn the house to roast the pig."
Under the doctrine of partial invalidity, when one part of a statute is valid and constitutional and another part is unconstitutional and void, and the parts are distinctly separable so that each can stand alone, the court may enforce the valid part. "But if an obnoxious section is of such import that the other sections without it are incomplete, or would cause results not contemplated or desired by the legislative body which enacted it, then the entire statute or ordinance must be held inoperative." Ex parte Smith, supra, 128 So. 864, 867. Here, the portion of the statute in question is a single sentence, composed of interdependent words and phrases that cannot possibly be separated into one part that is constitutional and one that is not. So we can find no basis for the application of the doctrine of partial invalidity; nor, as noted above, can we introduce into the statute words of limitation not contained therein since to do so would be to make a new law, nor enforce an old one.
Reluctant as we are to overthrow a legislative enactment, we find our duty would be especially difficult in the instant case since, when the entire statute falls, the appellant is relieved of paying the penalty for what could in another context, under any view of our federal and state constitutions, be denounced as a heinous crime. Our reluctance is somewhat mitigated by the knowledge that by amending Sec. 847.01 the Legislature has perhaps made certain that future crimes of this character will not go unpunished (although the amended statute is not, of course, before us), and also by the fact that the appellant may not go scot-free since the record shows that he was also charged under a different statute with another offense growing out of the same incident.
In my opinion it should, however, be held under the decision of the United States Supreme Court in Butler v. State of Michigan, supra, 352 U.S. 380, 77 S.Ct. 524, 1 *571 L.Ed.2d 412, that Sec. 847.01, Fla. Stat. 1955, F.S.A., is repugnant to the due process clause of the Fourteenth Amendment to the federal constitution and invalid in its entirety.
For the reasons stated, the judgment appealed from should be reversed and I therefore respectfully dissent from the order of affirmance.
DREW, J., concurs.