J. W. BUCHANAN, *Plaintiff in Error*, v. STATE OF FLORIDA, *Defendant in Error*.

Division A.

Opinion filed May 31, 1929.

1060

*W. C. Hodges* and *Davis & Pepper*, for Plaintiff in Error;

*Fred H. Davis*, Attorney General, and *Roy Campbell*, Assistant, for the State.

BROWN, J.—Plaintiff in error was convicted, without recommendation, in the circuit court for Taylor County of the murder of W. C. Mobray, and sentenced to death. The judgment of conviction is before us on writ of error.

A motion in arrest of judgment was filed by plaintiff in error, containing several grounds. Only one of them is insisted upon in argument. That ground alleges that the board of county commissioners, in making up a list of jurors, from which came the jurors rendering the verdict, did not make out a list of not less than two hundred and fifty persons as required by the statute and the order of the court. The statute referred to is Chapter 12068 of the Laws of 1927, amending sections 2771, and other sections of the Rev. Gen. Statutes, and now appears as sections 4443, 4444, et seq., of Comp. Gen. Laws. Section 4444, Comp. Gen. Laws requires the county commissioners to hold a meeting in the first week of January of each year or as soon thereafter as practicable, or at such other times as the circuit judge may order and personally select and make out a list of not less than two hundred and fifty nor more than five hundred persons properly qualified under the provisions of section 1113 Comp. Gen. Laws to serve as jurors, and possessing certain other qualifications set forth in section 4444, which list shall be signed and verified by the said commissioners as having been personally selected as aforesaid and as possessing the prescribed qualifications according to their best information and belief. That said list shall be forthwith delivered to the clerk of the circuit court and recorded by him in the minute book of

the board of county commissioners. Section 1153 Comp. Gen. Laws provides that the clerk of the circuit court shall, on receiving such list, in the presence of the county judge and sheriff, write the names of the persons contained in said list on separate pieces of paper, and roll or fold the same so that the names written therein will not be visible, and deposit the same in the jury box. .

It appears from the evidence submitted in support of the motion in arrest that the list as recorded on the minute book of the county commissioners contained only two hundred and forty-seven names. But the State proved by the clerk and his deputy that the list delivered to the clerk by the county commissioners contained two hundred and fifty names, and that in copying the list in the minute book three names were by clerical error omitted. The clerk was not able to produce the original list, which he said he had put in the jury box, but he did produce a duplicate carbon copy, signed and certified by the county commissioners. He said that the commissioners delivered the two lists in duplicate, both signed and certified, and that he considered them as in effect duplicate originals, though one was a carbon copy of the other, and he produced and identified the signed and certified carbon copy. Whether this copy be considered as an original document or not, it is very strong evidence that the original list contained the requisite number of names. In Keech v. State, 15 Fla. 591, it was held that the object of recording the list is to preserve upon the records the list of names and for the information and convenience of the court, but that "it can scarcely be said that the omission of the clerk to record the certificate, or even the list, is an irregularity in respect to the selection, summoning or empaneling of jurors. If the clerk neglects to perform such duty as directed by the statute, the court may require

and compel him to do it at any time, and thus the omission is cured. The accused cannot be prejudiced by it.'' Thus it appears that the contention that the list as recorded in the minutes must be deemed as controlling evidence as to what the list contained, although the list itself showed something to the contrary, is not well founded. Under the statute, it is the list which is required to be made, signed and certified by the county commissioners. It is merely a ministerial duty of the clerk to copy it into the minute book, and if the list be valid and sufficient, an error in so copying and recording the same would not invalidate the list. It may well be that if the list so signed and certified by the county commissioners should be lost or destroyed and no satisfactory or legal evidence of its contents could be produced, the copy made on the minutes might be deemed a true copy and recorded in the absence of clear evidence that it was in fact not a true copy. But in this case the State produced very convincing evidence to the court that the original list did in fact contain the requisite number of names, and the deputy clerk who copied same in the minutes explained very plausibly how it probably happened that, in so recording the same on the minutes, the three names were overlooked and omitted. The court below was not in error in holding that the motion was not sustained by the evidence.

Besides this, such a defect as was alleged in the motion in arrest should have been presented before pleading in bar and going to trial, by a challenge to the array of the petit jury, under the old rule as laid down in Gladden v. State, 13 Fla. 123; Reeves v. State, 29 Fla. 527, 536, 10 So. R. 901; and Green v. State 60 Fla. 22, 53 So. R. 610; or by plea in abatement, as has been held permissible in Colson v. State, 51 Fla. 19, 40 So. R. 183; Hicks v. State, 120 So. R. 330. When the attack is not upon the

legality of the trial jury, but is made against the validity of an indictment on account of some illegality in the selection, drawing or impanelling of the grand jurors, plea in abatement is usually the only proper remedy, as shown by the cases above cited and others which might be cited, though there appears to be some qualification of this rule in the Colson case, *supra*, ninth head note, as to errors appearing of record, which is not material here. But the plaintiff in error here, upon the ground alleged, could have resorted to either a challenge to the array or a plea in abatement. However, he did neither, but went to trial without objection to the legality of the selection or drawing of the jury in any way, thus waiving the same, and the attack, made by the motion in arrest, came too late.

The denial of the motion for new trial is assigned as error. The first eight grounds of the motion raise the question as to the sufficiency of the evidence to sustain the verdict. The evidence offered by the State in this case is very much the same as that offered upon the trial of this same defendant for the murder of J. P. Brandt as carefully and graphically summarized in the opinion of MR. CHIEF JUSTICE ELLIS in Buchanan v. State, 116 So. R. 275, 95 Fla. 301, and which was held sufficient to sustain the verdict as to the guilt of the defendant of the murder in the first degree of said J. P. Brandt. Both men, Brandt and Mobray, were killed by plaintiff in error in the same encounter. If there be any substantial difference in the matter of the evidence, it would appear that the evidence in the instant case of the defendant's guilt is stronger than in the case involving the killing of Brandt. As pointed out in the opinion in the first case, the circumstances and physical facts shown in evidence tended to prove quite convincingly that W. C. Mobray had filled his pipe and was preparing to light it, and he was shot and killed, and

therefore it was highly improbable that he could have been shooting at and endeavoring to kill the defendant at the same time as testified to by him. Furthermore, the testimony of the defendant in this case as brought out on cross examination, shows some variations from that given by him in the case first tried, which were not conducive to inspiring faith in the credibility of his testimony as to how the killing took place.

A few steps northeast from the front door opening on to the front porch where the defendant testified the shooting took place, Mobray's body was found in the yard, lying upon his back, with right arm out-stretched and his left elbow partly under his body, his feet toward the doorway. Between the first and second fingers of his left hand was an unlighted match. Near the other hand, about half way between his hand and his head, his pipe, filled with fresh tobacco, was lying. On the porch was found a package of tobacco, through which a bullet had passed, and some of the tobacco had fallen out on the floor.

About six inches from Mobray's right hand a pistol was found lying by the members of the coroner's jury that afternoon, with *six* empty or exploded, cartridges in it, but it appears that one of the witnesses who arrived on the scene and talked with the defendant in the house that morning about thirty minutes after the difficulty said that the defendant then showed him a pistol which he said belonged to ''the man in the yard,'' Mobray, that had three loaded and *three* empty shells in it. That defendant also showed him a pistol that he said belonged to ''the man under the house,'' Brandt, with two empty shells in it, and that defendant told him Brandt had fired at him twice and Mobray three times. But this testimony shows that the defendant had moved the pistols and hence had had an opportunity to tamper with them. Some one had

evidently put in three empty shells during this intervening period. If this was done, the jury might have concluded that none of the shells were really empty immediately after the homicide.

It is, as we have intimated, not necessary to review the evidence as a whole. In the opinion of this court on the first case tried, it was held that whether or not the killing of Brandt by this defendant was unlawful and from premeditated design, was a question for the jury to determine from all the facts and circumstances in evidence. And after a review of the evidence it was held that the facts and circumstances testified to by the witness for the State were sufficient to support the conclusion reached by the jury. The same holding is applicable here. We are not unmindful of the rule that circumstantial evidence should be acted upon with great caution and must be strong enough to convince the jury of the guilt of the defendant beyond a reasonable doubt and to a moral certainty; that it must not only be consistent with the defendant's guilt, but must be inconsistent with any reasonable theory or hypothesis of his innocence. But the physical facts in evidence, the circumstances proven, the character of the wounds and range of the bullets, the nature and number of the bullet marks found on the premises, the mute testimony of the freshly filled pipe and unlighted match, and the bullet-pierced tobacco package and spilled tobacco on the porch, were apparently inconsistent with the defendant's story as to the manner in which the deceased came to his death, whereas they were consistent with and highly persuasive of the theory that Mobray was the man who said "Don't shoot," and that he was not making any hostile demonstration and not anticipating any trouble at the time he was shot. The jury had all this evidence before them, they saw and heard the defendant's testimony and

observed his demeanor upon the stand, and were in a better position to judge of the truthfulness of that testimony than is this court with only the cold record of the language used before it. In such a case, we hold here, as in the former case, that it was within the province of the jury to disbelieve the defendant's testimony, in whole or in part, or at least wherein it was contradicted by other evidence, or was inherently incredible and inconsistent with the physical facts proven and that the circumstantial evidence in the case was of such a character as that this court would not be warranted in setting aside the solemn conclusion of the jury that the defendant was guilty as charged. A resort to proof of circumstances is often the only means of establishing the ultimate fact of guilt, or innocence, as the case may be. In cases resting on circumstantial evidence, the fact of guilt is not susceptible of direct proof. It is a fact which must be inferred or deduced from the circumstances proven. It is the function of the jury to make such inferences and deductions, and so long as those deductions and inferences are not unfair or unreasonable, the courts should be slow to set them aside. Under the Constitution, the jury is preserved as the triers of controverted questions of fact. Although all human tribunals are liable to err, the jury has stood the test, on the whole, so well that it has been steadfastly retained for many centuries. The motion for new trial on the ground that the evidence was insufficient to authorize or sustain the verdict was properly overruled.

One of the grounds of the motion for new trial was based upon a portion of the court's general charge to the jury. The entire paragraph, with the portion excepted to italicized, reads as follows:

If you believe from the evidence in this case that W. C. Mobray and J. P. Brandt were duly authorized

prohibition enforcement officers in the employment of the Federal government, and that they visited the home of J. W. Buchanan in a peaceable and lawful manner, and advised him in such manner that they had been informed that he was selling intoxicating liquor, and that they desired to search his premises, and that he then and there invited them in and told them that they were welcome to search the premises if they desired, and they then and there entered his premises upon his invitation so to do, for the purpose aforesaid, and that while thereon they continued to conduct themselves in a lawful manner, and not in violation of said invitation and permission, then in such case, if you believe the same to be the facts from the evidence, they would not be considered as trespassers upon the premises of the said J. W. Buchanan. *But if they entered without his invitation, or without lawful authority so to do, which fact you are to determine from the evidence, then they would be trespassers,* and if while so upon said premises with or without right, you believe from the evidence that W. C. Mobray assaulted J. W. Buchanan, or attempted to invade his home, then he would not be obliged to retreat, but had the right to stand his ground and use such force as would to a cautious and prudent man appear necessary to save his life or protect his home from invasion or himself from great bodily harm. But unless a reasonably cautious and prudent man would entertain the same belief from the same appearances, of which you gentlemen are the ultimate judges, it would be no defense, even though the belief of danger was honest.

Counsel for plaintiff in error insist that this was error, because there was not any evidence that Mobray and

Brandt had any right to enter defendant's home except under the defendant's invitation or under search warrant; that the jury had been advised by the statement of the State Attorney in connection with the testimony of Sheriff Lipscomb that a search warrant was found in the pocket of Brandt, and that while the court would not permit its admission in evidence, they were thus advised of its existence; that by thus charging the jury, the jury were permitted to find from the evidence that the deceased men entered defendant's home either by invitation or by lawful authority, which latter could only relate to the search warrant. That therefore the court accorded the jury the right to find that even if Brandt and Mobray violated the terms of the defendant's invitation, they nevertheless had the right to enter under their search warrant. That this was erroneous, as the search warrant was never admitted and hence it was not shown that such warrant entitled the holders to enter thereunder. That in view of the above effect of the court's charge, the defendant requested the giving of a charge to the effect that the existence of the search warrant in the officer's pocket would not give the right to enter, which charge the court refused to give.

As the defendant in his testimony admitted that when the two men drove up in front of his house and he went out to see them, and they told him their business, and he consented, and in effect invited them, to enter his home for the purpose of searching it, this amounted to waiver of his right to demand the production of a legal search warrant and rendered the existence of such a warrant immaterial. It removed from the case the question of the lawfulness of their entry. As to whether, after entering the defendant's premises and going to the door, they violated the terms of the invitation, express or reasonably implied, this is another question, which is not based upon the exist-

ence of a search warrant or its validity, but upon the invitation and its express or reasonably implied terms. We think, in the light of the evidence in this case, the remainder of the sentence, the first part of which is objected to, rendered the portion objected to, if it was error at all, harmless to the defendant. The remainder of the sentence was: "and if while so upon said premises, with or without right, you believe from the evidence that W. C. Mobray assaulted J. W. Buchanan, or attempted to invade his home, then he would not be obliged to retreat, but had the right to stand his ground and use such force as would to a cautious and prudent man appear necessary to save his life, or protect his home from invasion or himself from great bodily harm."

The sixty-sixth assignment of error is based upon the overruling by the court of defendant's objection to a statement by one of the attorneys for the State in his argument, "as to the guilt of this defendant in some other case." This is all that the transcript shows except that in ruling upon the objection the court said that "counsel was within the record." We cannot say that this unconnected reference by counsel, segregated from the remainder of his comments on the subject, was improper, or at least, that it was prejudical to the defendant. There were frequent references in the testimony as to what witnesses testified on the former trial when the defendant was being tried for the killing of Brandt, and it must have been a matter of common knowledge in Taylor County that he had been found guilty in that case. While this former conviction should not have been argued in this case, we cannot see how a casual reference to a fact which must have been well known to the jury could have been such prejudicial or harmful error as would authorize this court to set aside the verdict and

judgment, especially when this Court is not advised of the context from which this vague reference was extracted.

We have carefully considered all the other assignments of error which have been argued by counsel for plaintiff in error, but we find no reversible error in the record, and the judgment of conviction must be affirmed.

Affirmed.

TERRELL, C. J., AND ELLIS, J., concur.

WHITFIELD, P. J., AND BUFORD, J., concur in the opinion and judgment.