Ellis, J.,
 

 (concurring) : J. Wi Buchanan was convicted of murder in the first degree with recommendation to
 
 *1219
 
 mercy on March 21, 1927, in Taylor County. The person whom he killed was named J. P. Brandt. Buchanan was sentenced to life imprisonment and on writ of error to the Supreme Court the judgment was affirmed. See Buchanan v. State, 95 Fla. 301, 116 So. R. 275.
 

 Following the conviction of Buchanan for the murder of Brandt, Buchanan was, on the 8th day of October, 1927, convicted of murder in the first degree without recommendation for the murder of Vf. C. Mobray and was sentenced to death by electrocution. Upon writ of error to the Supreme Court that judgment was also affirmed. See Buchanan v. State, 97 Fla. 1059, 122 So. R. 704.
 

 The history of the two crimes is given in the two cases to which reference is above made. Brandt and Mobray were killed by Buchanan on the same day at the latter’s home in Taylor County on December 9, 1926.
 

 On May 28, 1930, Honorable Doyle E. Carlton, as Governor of the State of Florida, caused to be issued a death warrant against Buchanan for the execution of the death sentence by electrocution for the murder of Mobray. Thé death warrant was directed to J. S. Blitch, Superintendent of the State Prison, and F. L. Lipscomb, Sheriff of Taylor County, commanding the Sheriff to deliver Buchanan to Blitch, Superintendent of the State Prison, not less than five days prior to June 9, 1930, and commanding the latter to securely keep Buchanan until the sentence of death shall be executed and that at an hour on a week day to be decided by the Superintendent of the State Prison in the week beginning with Monday, June 9, 1930, within the permanent death chamber of the State Prison in Union County and agreeably to the 6125th Section of the Revised General Statutes as amended by chapter 9169 of the Laws of Florida, 1923, the Superintendent of the Prison and the Sheriff of Taylor County should cause the execu
 
 *1220
 
 tion of the sentence of the court in all respects to be done and performed upon Buchanan.
 

 The warrant commanded the Superintendent of the State Prison or some deputy by him to be designated and the Sheriff of Taylor County, unless prevented by sickness or other disability, to be present at such execution. The warrant commanded that such execution be carried out by the Superintendent of the State Prison and the Sheriff of Taylor County and such deputies, electricians and assistants as the Superintendent of the State Prison and Sheriff of Taylor County might require to be present to assist; that the execution should be in the presence of a jury of twelve respectable citizens who should be requested to be present and witness the same; that the Superintendent of Prison and the Sheriff should require the presence of a competent practicing physician or the physician of the prison and that all other persons other than the jury of twelve respectable citizens, the counsel for the criminal, such ministers of the gospel as the criminal shall desire, officers of the prison, deputies and guards should be excluded during the execution. The warrant recited that the sentence of the court required that Buchanan should suffer the pains of death by being electrocuted by the passing through his body of a current of electricity of sufficient intensity to cause his immediate death and until he be dead.
 

 The judgment of the court required Buchanan to be safely kept by the sheriff of Taylor County in the common jail of the county until the Governor of Florida should issue his warrant for the execution of Buchanan after which the latter should be conveyed to the State Prison there to be safely kept by the Superintendent of the State Prison until such time as the Governor should by his warrant designate and that at the time so designated the “said
 
 *1221
 
 Superintendent of the State Prison, or one of his authorized deputies” shall cause to pass through the body of Buchanan
 
 “a
 
 current of electricity of sufficient intensity” to cause his immediate death and continue the application of such current until the death of Buchanan.
 

 The terms used in both the judgment of the court and the warrant of execution as issued by the Governor are set forth fully in order that certain questions of law presented in these proceedings may be the more clearly understood.
 

 An examination of Chapter 9169, Laws of Florida, 1923, shows that the death warrant as executed by the Governor conforms in all essential respects to the requirements of the statute. The statute fixes the place of execution to be within the walls of a permanent death chamber which the Commissioners of State Institutions are required to provide at the State Prison Farm or such- other place within the State as they shall establish; that the Superintendent of the State Prison or in case of his death, disability or absence, a deputy shall be executioner and that the Sheriff of the county wherein the conviction occurred shall be ex-officio deputy executioner of the sentence of death and shall be present at the execution unless he be prevented by sickness or other disability. The statute also requires all executions to be carried out by the “executioner, deputy executioner and such deputies, electricians and assistants as
 
 he
 
 may require to be present to assist (italics mine).” The statute also makes provision for the presence of others at the execution as set out in the warrant.
 

 The sentence of the court likewise conforms to the statute in substance. It is not amenable to the criticism that it designates either the time specifically or place where the sentence of death is to be executed. See Savage v. State, 18 Fla. 909; Lovett v. State, 29 Fla. 356, 11 So. R. 172; Webster v. State, 47, Fla. 108, 36 So. R. 584.
 

 
 *1222
 
 On the 6th day of June, 1930, a justice of this Court, upon petition of J. W. Buchanan, issued a writ of
 
 habeas corpus
 
 to J. S. Blitch as Superintendent of the Florida State Prison, to have the body of Buchanan before Honorable A. Z. Adkins, judge of the Circuit Court for Union County to the end that said judge might consider and determine concerning the alleged illegality of Buchanan’s detention and imprisonment.
 

 The petition for that writ sets forth in substance what is herein before related as to Buchanan’s conviction of the murder in the first degree of Mobray, the sentence to death by electrocution, the judgment and sentence of the court and the executive warrant for the execution of the judgment upon the petitioner; that the petitioner had been delivered by the sheriff of Taylor County to J. S. Blitch as Superintendent of the Florida State Prison at Raiford, Florida, who holds the petitioner in a room adjoining the death cell at.the State Prison Farm under the executive warrant and intended under such authority to execute the sentence of death upon the petitioner by electrocution on the 10th day of June, 1930.
 

 In the petition for the writ of
 
 habeas corpus
 
 the petioner contends that as the sentence of life imprisonment against him for the murder of Brandt was in force and that the petitioner should have been in confinement at the State Prison in the serving of such sentence when the second sentence to the penalty of death for the murder of Mobray was entered against him, the former sentence was inconsistent with the latter one and the circuit court, therefore, without authority suspended the execution of the life sentence by requiring the petitioner to be retained in the Duval County jail where he had been detained after his first trial.
 

 
 *1223
 
 It will be observed that the judgment and sentence of the circuit court did not require the petitioner to be retained in the Duval County jail but on the contrary remanded him to the custody of the sheriff of Taylor County to be by him safely kept in the common jail of said county until the Governor shall have issued his warrant for the execution of the petitioner.
 

 It is also contended that as the pétitioner killed both Brandt and Mobray on the same day at the petitioner’s home in his own self defense against the aggression of the two persons upon petitioner and his home and as a part of the same transaction and difficulty, the killing of the two men constituted one and the same act of self defense on petitioner’s, part, therefore the homicide “if any offense at all” constituted but one offense for which the petitioner was subject to only one prosecution; that the second prosecution therefore for the murder of Mobray and the subsequent conviction of the petitioner for Mobray’s murder and the judgment and sentence of death were illegal, void and of no effect.
 

 The petitioner also shows by his petition that the judgment and sentence of death imposed by the Circuit Court, as well as the executive warrant for the execution of such sentence upon petitioner require the respondent, J. S, Bliteh, as Superintendent of the Florida State Prison, or one of his deputies, to cause the petitioner’s death which the respondent Bliteh has determined, intends and threatens to do at the time stated under authority of Chapter 9169, Laws of Florida 1923, Sections .8428, 8429, 8430, 8431, Comp. Gen. Laws of Florida, which statute authorized the Superintendent of the State Prison Farms, or in case of his death, disability or absence, a deputy to execute all sentences of death imposed by the courts of Florida.
 

 
 *1224
 
 It is also shown by the petition that the Constitution, Section 27 of Article III, provides for the election by the people or the appointment by the Governor of all state and county officers not otherwise provided by the Constitution and that the Legislature shall fix by law the duties and compensation of such officers; that the Constitution makes no provision for a Superintendent of the Florida State Prison or for a State Executioner, nor has the Legislature made provision by law for the appointment by the Governor or the election by the people of any State Executioner or Superintendent of the Florida State Prison; that the said statute authorizing the Superintendent of the Florida State Prison to be State Executioner makes no provision for the appointment by the Governor or the election by the people of such Superintendent or Executioner; that Blitch, as Superintendent of the Florida State Prison and State Executioner, exercises the authority, performs the function and holds the position of an officer of the State of Florida and he intends to execute the sentence of death upon the petitioner without having been appointed by the Governor of Florida or elected by the people as required by Section 27 of Article III of the Constitution. The petitioner contends that therefore the said Blitch is without lawful authority to cause the death of the petitioner as commanded by the executive warrant.
 

 Upon the hearing before Honorable A. Z. Adkins, Judge of the Twenty-sixth Judicial Circuit, the petitioner was remanded to the custody of the respondent as Superintendent of the State Prison for the service of the sentence of life imprisonment at hard labor imposed upon the petitioner by the Circuit Court of Taylor County.
 

 The Judge held Chapter 9169, Laws of Florida 1923, authorizing the imposition of the sentence of death by electrocution upon persons convicted of crime in Florida, to be
 
 *1225
 
 void, because in conflict with the Constitution in that the “superintendent of the Florida State Prison, in the opinion of the Court, is an officer of the State of Florida and exercises the functions of an officer and the legislature has not made provision by law for the appointment by the Governor, or election by the people, of such officer. ’ ’ The judge also expressed doubt as to the sufficiency of the title to the act, and doubt as to the sufficiency of each section of it.
 

 The court allowed a writ of error and the cause is brought here for review.
 

 Two reasons are given by the judge before whom the cause was heard for remanding the petitioner to the custody of t'he Superintendent of the Florida State Prison for service of the sentence of life imprisonment, but the court is not concerned with the reasons expressed in the order for making it. If the order is correct or erroneous it will be so held, the reasons given by the judge who heard the cause, notwithstanding. See Dunnellon Phosphate Co. v. Crystal River Lumber Co., 63 Fla. 131, 58 So. R. 786; Hoopes v. Crane, 56 Fla. 395, 47 So. R. 992.
 

 The fact that the trial court entertained a “grave doubt” as to the sufficiency of the title of the act or the sufficiency of its provisions is obviously no ground for holding the act to be in violation of any expressed or necessarily implied inhibition of the Constitution. The act should be held to be valid notwithstanding such doubt. The rule is that no act shall be declared void or in violation of the Constitution unless it clearly appears to be violative of some expressed or necessarily implied inhibition contained therein. See Hunter v. Owens, 80 Fla. 812, 86 So. R. 839; State ex rel., Terry v. Vestel, 81 Fla. 625, 88 So. R. 477; Board of Comrs. of Everglades Drainage Dist. v. Forbes Pioneer Boat Line, 80 Fla. 252, 86 So. R. 199; State ex rel., Clarkson v. Philips, 70 Fla. 340, 70 So.
 
 *1226
 
 R. 367; State ex rel., Moody v. Bryan, 50 Fla. 293, 39 So. R. 929; Hayes v. Walker, 54 Fla. 163, 44 So. R. 747.
 

 It must be assumed that in passing a law the legislature intended a valid enactment rather than one in conflict with the Constitution, and statutes should if possible be so construed as to be constitutional rather than as conflicting with the Constitution. See State v. Philips,
 
 supra;
 
 Christopher v. Mungen, 61 Fla. 513, 55 So. R. 273.
 

 A statute should be in positive conflict with some designated or identified provision of the Constitution before it should be declared unconstitutional, said this Court in Lainhart v. Catts, 73 Fla. 735, 75 So. R. 47. See also Jackson v. Neff, 64 Fla. 326, 60 So. R. 350.
 

 It must be assumed therefore that the basis of the court’s order remanding the petitioner to the custody of the Superintendent of the State Prison for the service of the life sentence is that Chapter 9169,
 
 supra,
 
 is invalid because the act makes no provision for the appointment by the Governor or election by the people of a Superintendent of the Florida State Prison which position the Court deemed to be an office. But the act is not one to provide for the employment of a Superintendent of the State Prison -and to define his powers and prescribe his duties. It is an act to amend certain sections of the Revised General Statutes relating to the manner and means of inflicting punishment of death in Florida so as to provide for the infliction of the punishment of death by electrocution. The provisions that an employee of the State called the Superintendent of the State Prison shall be the executioner, who determines the day of the week during the “week of execution” on which the sentence shall be carried out, and that it shall' be carried out by the Superintendent called the executioner and deputy executioner who is designated by the act to be the Sheriff of the County (who is an of
 
 *1227
 
 ficer) wherein, the criminal was convicted and such deputies, electricians and assistants as
 
 he
 
 may require to be present to assist, would not seem to constitute a different and wholly incongruous subject so as to render the act-amenable to the criticism that it contains two subjects.
 

 The points presented by the relator in his petition for release from the custody of the Superintendent of the State Prison as executioner to carry out the sentence of death are three which in the inverse order of their importance are as follows in substance:
 

 First, the petitioner Buchanan should not be required to suffer the penalty of death upon his conviction of the murder of Mobray because Buchanan at the time of such conviction was serving a life sentence for the murder of Brandt and should then have been serving his sentence at the State Prison, so that to sentence him to death for Mobray’s murder the trial court suspended the execution of the life sentence by requiring Buchanan to be retained in the Duval County Jail to be thence delivered to the Superintendent as executioner of the death sentence;
 

 Second, That the petitioner killed both Brandt and Mobray on the same day in the one transaction and difficulty wherein the petitioner was acting in self defense of his life and home against the aggressions of the two persons killed; that having been tried and convicted for the murder of Brandt the petitioner in being required to stand trial for the murder of Mobray also was thus placed twice in jeopardy for the same offense in violation of Section 12 of the Declaration of Rights;
 

 Third, That as the execution of the death sentence, provided under the law as a penalty for the commission of a capital offense, is an act of sovereignty which may be performed only by an officer of the State or county and as the Superintendent of the State Prison, the person designated
 
 *1228
 
 by the act as the one person only to execute sentences of death and carry out such executions is not a state or county officer; therefore the death sentence imposed upon Buchanan cannot be carried out, because no provision is made by law for the carrying out of such sentence and the provisions of Chapter 9169,
 
 supra,
 
 designating the Superintendent of the State Prison as the person to carry out such sentence are invalid.
 

 There is no merit in the first point because the judgment which required the convict to be remanded to the custody of the sheriff of Taylor County to be by him safely kept in the common jail of that county until the Governor shall issue his warrant for the execution of the condemned man was not a suspension by the court of the life sentence already in effect but on the' contrary the superimposing upon it of a greater and more serious penalty for a different crime of which the petitioner stood convicted.
 

 Under an early practice in England where attainder was consequent on conviction of felony, the doctrine that a plea of
 
 autrefois' attaint
 
 was a bar to prosecution for another felony of the same grade obtained for the reason that a second trial would be wholly superfluous, but where the punishment was more severe for the second offense the plea would not prevent it. In the United States the doctrine is obsolete and hence a conviction and sentence for one felony is not a bar to an indictment or trial for another and a conyict while imprisoned in the penitentiary is not exempt from trial and sentence for another crime whether charged to have been committed before or during such imprisonment. See 8 R. C. L. p. 123; Rigor v. State, 101 Md. 465, 61 Atl. R. 631, 4 Ann. Cas. 719; Gaines v. State (Tex. Crim. Rep.), 53 So. W. R. 623; Flagg v. State, 11 Ga. App. 37, 74 So. E. R. 562; Commonwealth v. Ramunno, 219 Pa. St. 204, 68 Atl. R. 184, 14 L. R. A. (N. S.) 209, 12. Ann. Cas. 818;
 
 *1229
 
 Clifford v. Dryden, 31 Was. 545, 72 Pac. R. 96; State v. Keefe, 17 Wyo. 227, 22 L. R. A. (N. S.) 896, 98 Pac. R. 122, 17 Ann. Cas. 161; Kennedy v. Howard, 74 Ind. 87; Thomas v People, 67 N. Y. 218; People v. Flynn, 7 Utah 378, 26 Pac. R. 1114; People v. Majors, 65 Cal. 138, 3 Pac. R. 597, 52 Am. R. 295; Singleton v. State, 71 Miss. 782, 16 So. R. 295; Huffaker v. Commonwealth, 124 Ky. 115, 98 So. W. R. 331; Brown v. State, 50 Tex. Crim. R. 114, 95 So. W. R. 1039; Williams v. State, 130 Ala. 31, 30 So. R. 336.
 

 It is said that the State of Missouri is the only jurisdiction which refuses to follow the rule. In State v. Buck, 120 Mo. 479, 25 So. W. R. 573, it was held that one under sentence for a felony cannot be tried for another felony committed before sentence until he has served out the term of imprisonment assessed against him or the judgment has been set aside or reversed. See also State v. Bell, 212 Mo. 130, 111 So. W. R. 29.
 

 Other courts commenting upon the doctrine held by the Missouri court have said: If the theory is correct one sentenced for life may commit murder at pleasure without liability to punishment therefor by law. Kennedy v. Howard,
 
 supra.
 
 In New York in the case of Thomas v. People,
 
 suprat
 
 where one under a sentence for a term of years was tried for the murder of a fellow convict and sentenced to be hanged it was contended that the defendant could not be hanged before the term he was serving had expired. The court in denying the contention said:
 

 “This is a novel claim and seems to be based upon the idea that a'prisoner under sentence has a right to serve out his term. He has no such right. His term of service may be curtailed by legislation or by executive pardon, or he may be turned loose by the courts or the prison officials without violating any of his legal rights. Convicts, like other persons, are under the
 
 *1230
 
 protection of the law, and are amenable to its penalties. The laws for the punishment of crimes are general and apply to all persons in the State. ’ ’
 

 In Huffaker v. Commonwealth,
 
 supra,
 
 the court said:
 

 “If it were sound, it would result that a prisoner serving a life sentence could murder everyone in the penitentiary without' being amenable to law. No authority is produced, or,, in our opinion, can be produced, to uphold so monstrous a conclusion, and it carries with it its own refutation.” '
 

 The petitioner may have objected to the process by which he was taken from the penitentiary and brought to a trial before the court in Taylor County for the murder of Brandt but he did not do so and the point could have been waived.- The court might have ordered him brought béfeme it for that purpose by
 
 habeas corpus
 
 but even in that case, his objection could have availed him nothing.
 

 The second point is likewise without merit because it is not permissible for the petitioner in this proceeding to say that his act in killing Brandt and Mobray was one act occurring in the one difficulty in which petitioner acted in self defense and in defense of his home. He availed himself of that defense or could have done so at the trial of each case, so the contention that it was one act or transaction occurring in defense of himself and his home has been decided against him. He was adjudged to have killed Brandt unlawfully from a premeditated design to take his life, likewise he was adjudged to have unlawfully killed Mobray from a premeditated design to take his life. Thus each crime was a separate, independent and different offense. It is no argument that because a person unlawfully from' a premeditated design to kill them takes the lives of
 
 *1231
 
 two or three human beings within the space of half a minute that he has committed only one offense. Such a doctrine finds no support in reason, nor are we favored with any authority in support of it. See 8 R. C. L. 151. Where the unlawful act operates on several objects there may be several offenses committed and several prosecutions for the same criminal transaction. See People v. Majors,
 
 supra;
 
 In re Allison, 13 Colo. 525, 10 L. R. A. 790.
 

 The third point we also think is without substance because it is apparent from the reading of the Act attacked that the Superintendent of the State Prison is not the
 
 only
 
 person designated by the Act to execute the sentence of death. It does not matter by what name the Superintenent of the prison may be designated by the Act in connection with the execution of the death sentence, it is the power he exercises under the terms of the Act and the duties he is required to perform by which the Act must be tested under the theory that only an officer of the State or county may actually inflict the death required by the statute to be imposed upon the criminal. It may be admitted that counsel’s first premise is sound, namely: that the actual infliction of death upon a person convicted of crime is an act of sovereignty and can only be performed by an officer of the State or county. Whether it is sound or not is immaterial for the purposes of this case because the Act by its terms imposes the duty upon the “sheriff of• the county wherein the conviction was had.” For that purpose he is named in the Act as “Deputy Executioner.” The Act provides: “All executions shall be carried out by the executioner, deputy executioner” and such deputies, electricians and assistants as
 
 he
 
 may require to be present. If the relative pronoun
 
 “he”
 
 relates to its antecedent it is clear that the deputy executioner, the sheriff of the county wherein the conviction was had, has actual direction and
 
 *1232
 
 control of the application of the electrical current which is required to be passed through the body of the convict until he is dead.
 

 If the person charged with that duty is required to be an officer and the Act would be deemed to be void if the Superintendent of the prison, who is not an officer, is required to do it, then under the rule which has time and again been announced by this Court, the construction that the sheriff of the county is the one designated by the Act to actually apply or direct the application of the life destroying current of electricity would obtain. That he is the one put in charge of the actual execution of the extreme penalty. Such a construction would save the Act from the objection of uneonstitutionality as made by counsel and therefore is the construction that should be placed upon it rather than the one that would destroy it. See Burr v. Florida East Coast Ry. Co., 77 Fla. 259, 81 So. R. 464; State ex rel. Finlayson v. Amos, 76 Fla. 26, 79 So. R. 433; Peninsula Ind. Ins. Co. v. State, 61 Fla. 376, 55 So. R. 398; State ex rel. Young v. Duval Co., 76 Fla. 180, 79 So. R. 692.
 

 It is the valid intention of the legislature which is sought in statutory construction. See State v. A. C. L. R. Co., 56 Fla. 617, 47 So. R. 969; D’Alemberte v. State, 56 Fla. 162, 47 So. R. 489.
 

 If under any rational view the provisions of the Act may be held to validly express the legislative view and relieve the Act from the constitutional objection that view should obtain. See City of Jacksonville v. Bowden, 67 Fla. 181, 64 So. R. 769, Ann. Cas. 1915 D 99; Anderson v. City of Ocala, 67 Fla. 204, 64 So. R. 775, 52 L. R. A. (N. S.) 287.
 

 In interpreting the words of a statute the courts perform no function of legislation but seek only to ascertain the
 
 *1233
 
 valid legislative intention. Fine v. Moran, 74 Fla. 417, 77 So. R. 533.
 

 The very forceful brief of the able counsel for the condemned man as well as the very persuasive oral argument made by them at the hearing of the case, in the judgment of the writer of this opinion, may not be effectively answered by saying that it is within the power of the court to “appoint suitable persons to perform functions in the court or to execute its orders and mandates, when no officer is available for that purpose, to the end that the court may not be hindered or rendered impotent in the complete exercise of its judicial functions.”
 

 The judgment of a court of competent judisdiction in a cause properly before it for adjudication is the law of that case, but it is the function of the executive branch of the government to enforce the law, therefore when by the judgment of a court of law of competent jurisdiction a person is condemned to imprisonment or death it is through the executive power that the judgment is enforced.
 

 It is the sovereign power acting through the Legislative branch of the government which provides for a place of detention in case a criminal is condemned to imprisonment or for his execution in case of his condemnation to suffer the death penalty. The Constitution makes no provision expressly for the infliction of the death penalty. . Its only reference is to capital offenses, nor does it require the Governor to execute in person or by "agent the judgment of a court condemning a criminal to suffer such penalty. It is merely an act of the Legislature which prohibits the execution of the death sentence until a warrant shall be issued by the Governor under the seal of the State. The reason for that provision is apparent. It is not that the Governor’s assent is essential to the validity of the court’s judgment and the sentence of the law, but that the operation of the
 
 *1234
 
 law upon the condemned person shall be stayed until the Governor by his warrant shall assent.
 

 The Constitution provides for pardons and commutations of punishment after conviction in all cases except treason and impeachment. A majority of the Board of Pardons of which majority the Governor shall be one may exercise the the power. The statute therefore makes provision for an opportunity for the exercise of that power before the death sentence is executed by requiring a warrant from the Governor. In this view the Governor’s warrant is a negation rather than an affirmation; it is the equivalent of a declaration that he declines to interfere with the execution of the death sentence; that the law shall take its course. Neither do I agree with the view that the actual infliction of the death penalty, the execution of the death sentence, is merely a mere ministerial act, a mere agency, instrument or means— of government.” In the view I have of the execution of the judgment and sentence of death, it is so far from being a mere ministerial act, a mere agency, instrument or means—■ it is the exercise of a supreme governmental or sovereign power which in the awful ceremony of its execution the State acting through one of its constitutional officers gives to each and every act its official sanction of the policy that demands extermination of a human life as a penalty for the commission of crime.
 

 There is little or no analogy between the exercise of such power and the guarding of a person against escape from a place of detention provided by the State, to which place a criminal by due process of law is condemned to remain and labor for a definite period. In such case the punitive sanction of the law is realized when the criminal enters the prison, it is his legal duty to remain in discharge of his obligation. To provide him with food and shelter and direct his labor is a ministerial act which may be performed
 
 *1235
 
 through the means of jailers, prison keepers and a guard, but where one is condemned to suffer death the official state’s function and solemn duty is not performed until through its official agencies 'the life of the criminal has been taken.
 

 "Why this high and solemn act of sovereign power may be performed by an unofficial person, an employee of a commission or board composed of State officials, but who would not be permitted to serve a summons
 
 ad respondendum
 
 or make an arrest, nor dertermine the right of property between individuals nor perform in the name of the State any act of sovereign power to be exercised by any one of the three branches of the government is not explained except by the phrase that destroying a' human life pursuant to judicial order is a “nondiscretionary authority and duty” and not “essentially official” in its nature.
 

 In the view I have, the act is official in the highest degree. If it is not a supreme official exercise of sovereign power it would be unlawful homicide and because it is the discretionary act, judgment and will of the sovereign it is justified. See Section 7135, Comp. Gen. Laws, 1927.
 

 Under the provisions of that, statute homicide is justifiable when committed by “public officers
 
 and
 
 those acting by their command in their aid and assistance, either in obedience to any judgment of a competent court, or,” etc.
 

 The Governor does not kill a person condemned to death, neither does the court which adjudged the criminal to be guilty of murder and amenable to the death penalty. The killing of the criminal condemned must to be justifiable be brought about by “public officers
 
 and
 
 those acting by their command in their aid and assistance ’ ’ in obedience to a judgment of a competent court.
 

 The executive warrant'issued in this case did not, as may be inferred from the language of the majority opinion,
 
 *1236
 
 direct only J. S. Blitch, the Superintendent of the State Prison, or a deputy to execute the sentence, on the contrary the warrant was directed to ‘ ‘ Honorable J. S. Blitch, Superintendent of our State Prison,
 
 and
 
 Honorable F. S. Lipscomb, Sheriff of our County of Taylor” and it commanded the said “Superintendent of our State Prison, or some deputy by you to be designated,
 
 and
 
 you, the said Sheriff of our said County of Taylor,, unless you be prevented by sickness or other disability” to be present at the execution. It commands them jointly to “cause the execution of the said sentence of our said court in all respect to be done and performed upon him, the said J.
 
 W.
 
 Buchanan, ’ ’ .etc.
 

 The statute, Chapter 9169,
 
 supra,
 
 empowers and directs the public officer, the sheriff of the county wherein the conviction was had, called “ex-officio deputy executioner” and only him to designate the “deputies, electricians and assistants ’ ’ whom
 
 he
 
 may require to be “ present to assist. ’ ’
 

 The authority for the execution of the sentence is the judgment of the court. That judgment derives no additional efficacy nor extra sovereign authority from the executive warrant. The homicide is committed by “public officers
 
 and
 
 those acting by
 
 their
 
 command in
 
 their
 
 aid and assistance (italics mine)” in obedience to the court’s judgment. The statute merely provides that the judgment shall not be executed until the Governor issues the warrant to proceed.
 

 The Act of the legislature, Chapter 9169,
 
 supra,
 
 cannot be justified in my opinion if its purpose must be discovered by the meaning which the majority .opinion gives to the word “Executioner,” and the phrase “ex-officio deputy executioner,” nor indeed is it necessary to resort to such definitions, for the Act, while requiring the Superintendent to be present at the execution of the sentence, clearly desig
 
 *1237
 
 nates the ‘ ‘ Sheriff of the county wherein the conviction was had” to be “ex-officio deputy executioner, and charges him with the official responsibility of executing the sentence.
 

 The sheriff by the terms of the Act is no deputy of the Superintendent. The latter has no power or authority over the sheriff and could not relieve him of the slightest of his duties in the matter which are fixed by statute and from which he cannot escape except by refusal or inability to attend and in that ease his deputies in his name, perform the act, commit the homicide.
 

 Now, if it is assumed that the Act makes provision for the execution of the death sentence by the Superintendent of the State Prison only or
 
 Ms
 
 deputy and such position is not an office within the constitutional meaning of the term and that such a legislative intention would be invalid, it follows that the Act must fail even if valid in other respects because no agency remains amongst its provisions for the practical enforcement of the law substituting punishment by electrocution for punishment by hanging. We should carefully examine the statute, therefore, to ascertain if such was the legislative purpose and whether any agency is left amongst the valid provisions of the Act by which the legislative purpose may be carried into effect.
 

 In this investigation we should not assume that the legislature intended the enactment of an invalid Act but should be led to that conclusion only if the clear purpose to do so is evident from the terms of the Act.
 

 Prior to the enactment of Chapter 9169,
 
 supra,
 
 the death sentence was executed by the sheriff who was required to “cause to be executed the judgment and sentence of the law upon such convict.” See Section 6123, Rev. Gen. Stats., 1920. It required the sheriff of the county to be “present at the execution, unless he be prevented by sickness or other casualty, and also two of his deputies, to be
 
 *1238
 
 designated by Mm.” See Section 6125, Rev. Gen. Stats., 1920.
 

 The punishment of death was required to be “inflicted by hanging the convict by the neck until he be dead. ’ ’ See Section 6124, Rev. Gen. Stats., 1920. After the punishment of death had been inflicted upon any convict in obedience to a warrant from the Governor the “sheriff shall return the warrant as soon as may be, with a statement under his hand of his doings therein, to the Governor,” etc. See Section 6126, Rev. Gen. Stats., 1920.
 

 The sheriff is the executive officer of the circuit court of the county. Section 3086, Rev. Gen. Stats., 1920, Section 4869, Comp. Gen. Laws, 1927. He was allowed compensation for the services in and about the execution of the death sentence upon any prisoner. For hanging the prisoner he was allowed ten dollars; erection of a gallows, not exceeding fifteen dollars. Section 3087, Rev. Gen.' Stats., 1920, Section 4870, Comp. Gen. Laws, 1927.
 

 Now, Chapter 9169,
 
 supra,
 
 Section 2, provides substitution of death by electrocution for death by hanging. That section necessarily eliminates Section 308.7, Rev. Gen. Stats., 1920, Section 4870, Comp. Gen. Laws, 1927,
 
 supra,
 
 because no gallows is now required and consequently no service may be rendered requiring the use of such instrumentality. Section 2 of the Act also provides for the place where the electrocution of the convict shall occur and for the setting up of the necessary apparatus to that end. That section also contains the following clause: ‘ ‘ and the Superintendent of the State Prison, or in the case of his death, disability or absence, a deputy shall be executioner. ’ ’
 

 That is the clause to which exception is taken and which, according to the view of counsel renders the act inoperative. ’ ' •
 

 
 *1239
 
 The term ‘ ‘ Executioner ’ ’ is defined by the Century Dictionary as “one who executes or carries into effect, especially one who carries into effect a death sentence of a court or tribunal; a functionary who inflicts capital punishment in pursuance of a legal warrant; a headsman or hangman.” The Universal Dictionary of the English language defines the word as ‘ ‘ one who inflicts capital punishment in pursuance of a legal warrant.” That is given as a special definition however. Another definition is: “one who kills in any way; a murderer.” Still another definition by the same authority is: “ The instrument or means by which anything is executed, performed or carried out.” The Cyclopedic Law Dictionary defines the word as: “ The name given to him who puts criminals to death according to their sentence; a hangman. In the United States executions are so rare that there are no executioners by profession. It is the duty of the Sheriff or Marshal to perform this office or to procure a deputy to do it for him.” Bouvier gives the definition in the Same terms. Webster’s New International Dictionary of the English Language defines the word as: “One who puts to death, especially in conformity to legal warrant, as a hangman.”
 

 Whichever of the above definitions that may be accepted it is not clear that the word used in Section 2 as applied to the Superintendent has the exact meaning of the words or phrase as used in Section 6123 Rev. Gen. Stats. 1920 “cause to be executed the judgment and sentence of the law upon such convict, ’ ’ because in view of the remaining portion of the statute, Chapter 9169, supra, such meaning is very doubtful, which doubt is accentuated by the argument that such reading of the term renders the act amenable to the criticism that an unlawful agency is thus provided for the execution of the sentence of the law and judgment of the court.
 

 
 *1240
 
 The functions or duties of an officer or employee are not defined by the name given in the statute to such officer or the employment, particularly if the terms of the statute define those duties or functions.
 

 Now Section 3 of Chapter 9169,
 
 supra,
 
 defines the duties or functions of the person who has actual charge and supervision of the execution of the “judgment and sentence of the law upon such convict. ’ ’ The words are as follows: “The Superintendent of the State Prison or some authorized deputy by him to be designated shall be present at the execution,
 
 and for the purpose of executing sentences
 
 of
 
 death
 
 as
 
 provided
 
 by law, the
 
 sheriff
 
 of the
 
 county wherein
 
 the
 
 conviction
 
 was had
 
 shall
 
 be
 
 ex-officio deputy executioner
 
 of such
 
 sentence
 
 of
 
 death
 
 and shall be
 
 present
 
 at the execution unless he be prevented by sickness or other disability (italics ours)”.
 

 Thus the provisions of Section 6125 Rev. Gen. Stats. 1920, requiring the sheriff, the executive officer of the court to be present at the execution, were continued in force.
 

 Section 3 of the act further specifically provides by whom the execution shall be carried out in the following words: “All executions shall be carried out by the executioner, deputy executioner and such deputies, electricians and assistants as
 
 he
 
 may require to be present to assist;” (italics ours) etc. Thus the officer of the court, the sheriff, who for the “purpose of executing sentences of death” is called “deputy executioner” is charged jointly with the “executioner” with the duty of executing the sentence of death. The “Executioner,” the Superintendent of the State Prison, an employee, and the Sheriff of the County, the officer of the court, are vested with the solemn duty of directing and having control of the awful ceremony, but if the “Executioner,” the Superintendent, may not
 
 *1241
 
 under the law perform such function the “ex-officio deputy executioner,” the sheriff of the county in which the conviction occurred, the executive officer of the court, remains solely in charge of all the formalities and duties of the execution and necessarily he and only he is the officer and person to whom the relative pronoun
 
 “he”
 
 in the same sentence applies wherein it is provided “and such deputies, electricians and assistants as
 
 he
 
 may require to be present to assist (italics ours).”
 

 This construction meets counsel’s objection and the trial court’s views as to the inefficacy of the act. The “deputy executioner,” the sheriff, being thus in charge of the execution it is to him only that the terms of Section 4 of the Statute apply which provide:
 

 “RETURN OF WARRANT.—After punishment of death has been inflicted upon any convict in obedience to the warrant of the Governor, the officer in charge of such execution shall return the warrant as soon as may be with a statement under his hand of his doings therein, to the Governor, and shall also file in the Clerk’s office where the conviction was had, an attested copy of the warrant and the statement aforesaid, and such shall be by the Clerk recorded in the minutes of the court whose judgment was thus executed. ’ ’
 

 Only in this view of the case the judgment of the circuit court should be reversed with directions to remand the petitioner to the custody of the Superintendent of the State Prison to be by him safely kept pending the issuing of a warrant by the Governor for the execution of the petitioner Buchanan, and upon this ground only I concur in the conclusion reached by the majority.