## STATE *v.* J. O. ASHMAN.

### (*Nashville.* December Term, 1910.)

1. ˮCONSTITUTIONAL LAW. Statute imposing privilege tax upon nonresidents for taking pearl mussels or other shell fish, for profit, is not unconstitutional.

The statute (Acts 1909, ch. 560), prohibiting nonresidents from taking pearl mussels or other shell fish, for profit, without license and payment of a prescribed privilege tax, was enacted under the power conferred by the State constitution (art. 11, sec. 13), authorizing the enactment of laws for the protection and preservation of game and fish within the State, and does not violate that provision of the State constitution (art 1, sec. 8), prohibiting the disseizin of property and privileges, but by the judgment of his peers or the law of the land, etc., nor does it violate the federal constitution (art. 4, sec. 2, and 14th am.), prohibiting State laws abridging the privileges or immunities of the citizens of the several States. (*Post, pp.* 655, 656.)

Acts cited and construed: Acts 1909, ch. 560.

Constitution cited and construed: State const., art. 1, sec. 8, art. 11, sec. 13; U. S. const., art. 4, sec. 2; 14th am.

2 FISH AND GAME. Title is in the State, when not reduced to possession nor under restraint; restriction and prohibition of right to take them.

Under the common law, the title to game and fish, not reduced to possession nor under restraint, is in the sovereign power (in Great Britain, in the King; in the United States, in the several States, in trust for their inhabitants); and no one has any absolute property right therein, and the right to take them may be restricted or prohibited; and when granted or exercised, it is a privilege. It is a property right in the State, and not one of citizenship. (*Post, pp.* 657, 658.)

Cases cited and approved: Maney v. State, 6 Lea, 218; Peters v. State, 96 Tenn., 688; Magner v. People, 97 Ill., 333.

State v. Ashman.

3. CONSTITUTIONAL LAW.   Rights, privileges, and immunities secured to the citizens of the several States do not include property rights of the several States held in trust for their inhabitants.

The rights, privileges, and immunities, which are secured by the federal constitution (art. 4, sec. 2,ʹ and 14th am.) to the citizens of the several States, do not include any rights in the property of the several States, held in trust for their own inhabitants; and State laws which prohibit them, in whole or in part, from participating in the benefits of that property do not deprive them of any constitutional rights.   (*Post, pp.* 656-662.)

Cases cited and approved:   Corfield v. Coryell, 4 Wash. (C. C.), 371, 380, Fed. Cas., No. 3,230; Scott v. Sandford, 19 How., 580; McCready v. Virginia, 94 U. S., 391; Wharton v. Wise, 153 U. S., 155-177; State v Medbury, 3 R. I., 138; Chambers v. Church, 14 R. I., 398; Commonwealth v. Hilton, 174 Mass., 32; Haney v. Compton, 36 N. J. Law, 507; People v. Lowndes, 130 N. Y., 455.

FROM HUMPHREYS.

Appeal in error from the Circuit Court of Humphreys County.—W. L. COOK, Judge.

ATTORNEY-GENERAL CATES, for State.

H. C. CARTER, for Ashman.

MR. CHIEF JUSTICE SHIELDS delivered the opinion of the Court.

The defendant, a nonresident of Tennessee, was indicted for the violation of chapter 560 of the published

State v. Ashman.

Acts of 1909 prohibiting nonresidents from engaging in the business of taking pearl mussels or other shell fish, for profit, in the waters of this State without first obtaining a permit or license from the clerk of the county court of the county where said waters are located, and payment of the privilege tax imposed upon nonresidents engaged in that business. The indictment, on the motion of the defendant was quashed, upon the ground that the statute contravened article 4, section 2, of the constitution of the United States, ordaining that "the citizens of each State shall be entitled to all privileges and immunities of citizens in the several states," and the clause of the fourteenth amendment of that constitution, ordaining that "no State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States," and article 1, section 8, of the constitution of Tennessee, ordaining that no man shall be disseized of his freehold, liberties, or privileges, or deprived of his liberty or property, but by the judgment of his peers or the law of the land; there being no such tax imposed upon citizens of this State.

The State has brought the case of this court for review.

The judgment must be reversed. The statute alleged to have been violated was enacted by the general assembly under the authority vested in it by article 11, section 13, of the constitution of this State, to enact laws for the protection and preservation of game and fish within the State, and does not violate the constitutional provisions relied upon.

The common law vests the title of game and fish, not reduced to possession or under restraint, in the sovereign power—in Great Britain, in the King; in the United States, the several states, in trust for their inhabitants. No one has any absolute property right in game or fish while in a state of nature and at large, and the right to take them may be restricted or prohibited, and, when granted or exercised, it is a privilege. It is a property right, and not one of citizenship. *Maney* v. *State*, 6 Lea, 218; *Peters* v. *State,* 96 Tenn., 688, 36 S. W., 399, 33 L. R. A., 114; *Magner* v. *People,* 97 Ill., 333; 2 Black. Com., 394, 410.

The rights, privileges, and immunities which are secured by the federal constitution to the inhabitants of the several States do not include any rights in the property of the several States held in trust for their own inhabitants, and laws which prohibit them in whole or in part from participating in the benefits of that property do not deprive them of any constitutional rights. The majority of the States have enacted laws prohibiting or limiting the right of nonresidents to take game or fish within their respective boundaries, and, upon the principles above stated, this legislation has been invariably upheld by all the courts.

A leading case upon the precise question before us is *Corfield* v. *Coryell*, 4 Wash. (C. C.), 371, Fed. Cas. No. 3,230, decided by Mr. Justice Washington, of the supreme court of the United States at circuit. It involved the validity of a statute of New Jersey, which, among

15 Cates—42

other things, provided that it should "not be lawful for any person who is not at the time an actual inhabitant and resident in this State, to rake or gather clams, oysters, or shells in any of the rivers, bays or waters if this State." Mr. Justice Washington, in sustaining the act as a valid constitutional enactment, said:

"The next question is whether this act infringes that section of the constitution which declares that 'the citizens of each State shall be entited to all the privileges and immunities of citizens in the several States?' The inquiry is, what are the privileges and immunities of citizens in the several States? We feel no hesitation in confining these expressions to those privileges and immunities which are, in their nature, fundamental, which belong, of right, to the citizens if all free governments, and which have, at all times, been enjoyed by the citizens of the several States which compose this union, from the time of their becoming free, independent, and sovereign. . . . But we cannot accede to the proposition, which was insisted on by the counsel, that, under this provision of the constitution, the citizens of the several States are permitted to participate in all the rights which belong exclusively to the citizens of any other particular State, merely upon the ground that they are enjoyed by those citizens; much less that, in regulating the use of the common property of the citizens of such State, the legislature is bound to extend to the citizens of all the other States the same advantages as are secured to their own citizens. A several fishery, either as the right to it respects running fish, or such as are station-

State v. Ashman.

ary, such as oysters, clams, and the like, is as much the property of the individual to whom it belongs as dry land, or land covered by water, and is equally protected by the laws of the State against the aggressions of others, whether citizens or strangers. Where those private rights do not exist to the exclusion of the common right, that of fishing belongs to all the citizens or subjects of the State. It is the property of all, to be enjoyed by them in subordination to the laws which regulate its use. They may be considered as tenants in common of this property; and they are so exclusively entitled to the use of it that it cannot be enjoyed by others without the tacit consent or the express permission of the sovereign who has the power to regulate its use.

"This power in the legislature of New Jersey to exclude the citizens of the other States from a participation in the right of taking oysters within the waters of that State was denied by the plaintiff's counsel, upon principles of public law, independent of the provision of the constitution which we are considering, upon the ground that they are incapable of being appropriated until they are caught. This argument is unsupported, we think, by authority. Rutherfoth, bk. 1, c. 5, secs. 4, 5, who quotes Grotius as his authority, lays it down that although wild beasts, birds, and fishes, which have not been caught have never in fact been appropriated, so as to separate them from the common stock to which all men are equally entitled, yet where the exclusive right in the water and soil which a person has occasion to use in taking them is vested in others, no other person can

claim the liberty of hunting, fishing, or fowling on lands or waters, which are so appropriated. 'The sovereign,' says Grotius (book 2, c. 2, sec. 5), 'who has the dominion over the land, or waters, in which the fish are, may prohibit foreigners [by which expression we understand him to mean others than subjects or citizens of the State] from taking them.' That this exclusive right of taking oysters in the waters of New Jersey has never been ceded by that State, in express terms, to the United States, is admitted by the counsel for the plaintiff; and having shown, as we think we have, that this right is a right of property, vested either in certain individuals, or in the State, for the use of the citizens thereof, it would, in our opinion, be going quite too far to construe the grant of privileges and immunities of citizens as amounting to a grant of a cotenancy in the common property of the State to the citizens of all the other States. Such a construction would, in many instances, be productive of the most serious public inconvenience and injury, particularly in regard to those kinds of fish which, by being exposed to too general use, may be exhausted. The oyster beds belonging to a State may be abundantly sufficient for the use of the citizens of that State, but might be totally exhausted and destroyed if the legislature could not so regulate the use of them as to exclude the citizens of the other States from taking them, except under such limitations and restrictions as the laws may prescribe."

The case of *McCready* v. *Virginia*, 94 U. S., 391, 24 L. Ed., 248, involved the constitutionality of a statute of Virginia prohibiting citizens of other States from plant-

State v. Ashman.

ing oysters and cultivating oyster beds in any of the streams of that State, and was upheld; the opinion being delivered by Chief Justice Waite, who among other things said:

"By article 4, sec. 2, of the constitution, the citizens of each State are 'entitled to all privileges and immunities of citizens in the several States.' Mr. Justice Washington, in *Corfield* v. *Coryell*, 4 Wash. (C. C.), 380, Fed. Cas. No. 3230, thought that this provision extended only to such privileges and immunities as are in their nature fundamental, which 'belong of right to the citizens of all free governments' And Mr. Justice Curtis, in *Scott* v. *Sandford*, 19 How., 580 [15 L. Ed., 773], described them as such 'as belonged to general citizenship.'

"We think we may safely hold that the citizens of one State are not invested by this clause of the constitution with any interest in the common property of the citizens of another State. If Virginia had by law provided for the sale of its once vast public domain, and a division of the proceeds among its own people, no one, we venture to say, would contend that the citizens of other States had a constitutional right to the enjoyment of this privilege of Virginia citizenship. Neither if, instead of selling, the State had appropriated the same property to be used as a common by its people for the purposes of agriculture, could the citizens of other States avail themselves of such a privilege. And the reason is obvious: The right thus granted is not a privilege or immunity of general but of special citizenship. It does not 'belong of right to the citizens of all free governments,' but only to

the citizens of Virginia, on account of the peculiar circumstances in which they are placed. They, and they alone, owned the property to be sold or used, and they alone had the power to dispose of it as they saw fit. They owned it, not by virtue of citizenship merely, but of citizenship and domicile united; that is to say, by virtue of a citizenship confined to that particular locality."

We can add nothing to these exhaustive discussions of the question.

Other cases in accord with these are: *State* v. *Medbury,* 3 R. I., 138; *Chambers Bros.* v. *Church,* 14 R. I., 398, 51 Am. Rep., 410; *Commonwealth* v. *Hilton,* 174 Mass., 32, 54 N. E., 362, 45 L. R. A., 475; *Haney* v. *Compton,* 36 N. J. Law, 507; *People* v. *Lowndes,* 130 N. Y., 455, 29 N. E., 751; *Wharton* v. *Wise,* 153 U. S., 155-177, 14 Sup. Ct., 783, 38 L. Ed., 669.

The judgment of the circuit court is reversed, and the case remanded for trial.