THE STATE OF FLORIDA *ex rel.* W. C. SPENCER, *Petitioner* v. T. F. BRYAN, AS COUNTY JUDGE OF DIXIE COUNTY, FLORIDA, *Respondent.*

THE STATE OF FLORIDA *ex rel.* KARL K. EYCHANER, *Petitioner,* v. G. V. RAMSEY, AS COUNTY JUDGE OF HERNANDO COUNTY, FLORIDA, *Respondent.*

Opinion Filed January 28, 1924.

1. Under the common law of England the title to animals *ferae naturae* or game is in the sovereign for the use and benefit of the people, the killing or taking and use of the game being subject to governmental control and regulation for the general good. The power to control and regulate the killing and use of game was vested in the colonial governments of

America and passed with the title to game in its natural condition to the several States as they became sovereigns, for the use and benefit of all the people of the States respectively, subject to any provision of the Federal Constitution that may be applicable to such control and regulation.

2. The Constitution of the State does not forbid the passage of special or local laws upon the subject of game, and it contains no express provision relative to game; therefore the legislature may by a duly enacted law make any provision within its discretion for the preservation and conservation of the game in the State for the use and benefit of the people of the State, by regulating the taking or killing and the use of certain or all kinds of game in any part of the State and during any periods, where such laws do not deny to any one having rights in the premises the due process of law or the equal protection of the laws that are guaranteed to all persons by the State and Federal Constitutions.

3. The power and discretion of the legislature to control and regulate the subject of hunting game is not limited by the organic law, and the subject regulated may be as restricted in manner and extent as the legislature deems advisable; but the regulations should affect alike all persons similarly situated and conditioned with reference to the particular regulations.

4. While there may be no absolute private property right in game in its natural conditions, and while the State may by statute regulate the use of game in any manner and to any extent desired by the lawmaking power, yet the beneficial use of the game in the State belongs to all the people of the State, and a regulation that unjustly discriminates against any of the people of the State may in effect be a denial of the equal protection of the laws to those so unjustly discriminated against.

5. The legislature in protecting game may in its discretion limit a statute in the extent and purpose of its operation, but the regulation must operate upon all persons alike under practically similar conditions and circumstances.

6.  The discretion of the legislature in classifying those who are to be affected by a regulation for the protection of game will not be disturbed by the courts where the classification has some just, fair and practical basis in real differences with reference to the subject regulated and all doubts will be resolved in favor of the validity of a statute.

7.  The organic declaration that "all men are equal before the law" may be regarded as a guarantee that all persons shall have equal consideration and protection of the law for the maintenance and security of the rights to which they are legally entitled.

8.  All the *bona fide* citizens of the State irrespective of the counties in which they live, have a qualified beneficial property interest, subject to lawful governmental regulations for the public good, in all wild game while it is in any county of the State and not reduced to the lawful possession of any one; and as the State cannot lawfully deny to any of its citizens substantially equal rights with all other citizens of the State under like conditions, to lawfully hunt wild game in the State, the vesting of title to such game in the several counties is ineffectual to impair individual rights in the game or to relieve the State of the power and duty of just regulations for the good of all.

9.  Classifications by counties or otherwise for the purpose of prescribing regulations or exactions that in effect impose burdens on some of the citizens of the State that in kind or extent are not imposed upon other citizens of the State under practically similar conditions, with no conceivably just basis for the classifications or discriminations, constitute a denial to those injuriously affected of the equal protection of the laws in violation of the Fourteenth Amendment to the Federal Constitution.

10. The provisions of Chapter 9456 and Chapter 9431 of the Special or Local Laws of 1923, requiring respectively $10.00 and $50.00 license taxes of residents of the State who are non-residents of the said counties respectively as a prerequisite to permissible hunting of wild game in such counties within the

proper seasons, when residents of the county are required to pay only $1.00 or $1.25, are violative of the relators' organic rights to equal protection of the laws, in the enjoyment of a right to lawfully hunt wild game in the State, which the relators, who are residents of the State but non-residents of the county, have in common with all the citizens of the State.

Motions to quash alternative writs of mandamus.

Motions denied; peremptory writ ordered.

*R. E. L. Chancey*, for Petitioners;

*Hugh Hale* and *W. P. Chavous*, for Respondents.

WHITFIELD, J.—Chapter 9456 of the Special or Local Laws of 1923 requires all non-residents of Hernando County, Florida, to pay to the county a license tax of $50.00 for hunting wild game in that county during the hunting season under the general law, while under the same special or local law a resident of Hernando County is required to pay $1.00 license tax for hunting wild game in the county outside of the voting precinct of such resident. Chapter 9431 of the Special or Local Laws of 1923 requires residents of the State who are not residents of Dixie County to pay a license tax of ten dollars for hunting wild game in Dixie County during the hunting season named in the act, while residents of the county are required to pay a license tax of $1.25 for hunting wild game in Dixie County during the hunting season. By the general law residents of this State are required to pay a license tax of $3.50 to hunt wild game in proper season in any other county than that of their residence, and $1.25 license tax in the county of residence. Secs. 1292 and 1293 Rev. Gen. Stats., as amended by Chap. 8510, Gen. Laws of 1921.

Section 1291, Revised General Statutes of 1920, provides that "that ownership and title to all wild birds and game in the State of Florida are hereby vested in the respective counties of the State, for the purpose of regulating the use and disposition of the same."

In mandamus proceedings to require the issuance of licenses to residents of other counties of the State who desire to hunt wild game in proper season in Hernando and Dixie Counties, upon the payment of the $3.50 license tax required by the general law, the constitutional validity of the mentioned provisions of Chapters 9456 and 9431 is challenged. See 70 Fla. 340.

Under the common law of England the title to animals *ferae naturae* or game is in the sovereign for the use and benefit of the people, the killing or taking and use of the game being subject to governmental control and regulation for the general good. The power to control and regulate the killing and use of game was vested in the colonial governments of America and passed with the title to game in its natural condition to the several States as they became sovereigns, for the use and benefit of all the people of the States respectively, subject to any provision of the Federal constitution that may be applicable to such control and regulation. 2 Black. Comm. 394, 410; Geer v .State of Connecticut, 161 U. S. 519, .16 Sup. Ct. Rep. 600; Graves v. Dunlap, 87 Wash. 648, 152 Pac. Rep. 532, Ann. Cas. 1917B 944; State v. Ashman, 123 Tenn. 654, 125 S. W. Rep. 325; 27 C. J. 942 and notes; 12 R. C. L. 684; Harper v. Galloway, 58 Fla. 255, 51 South. Rep. 226; State *ex rel.* Clarkson v. Phillips,.70 Fla. 341, 70 South. Rep. 367, Ann. Cas. 1918A 138.

The constitution of the State does not forbid the passage of special or local laws upon the subject of game, and it contains no express provision relative to game; therefore

the legislature may by a duly enacted law make any provision within its discretion for the preservation and conservation of the game in the State for the use and benefit of the people of the State, by regulating the taking or killing and the use of certain or all kinds of game in any part of the State and during any periods, where such laws do not deny to any one having rights in the premises the due process of law or the equal protection of the laws that are guaranteed to all persons by the State and Federal Constitutions. Harper v. Galloway, 58 Fla. 255, text 260, 51 South. Rep. 226; 26 L. R. A. (N.S.) 794, 19 Ann. Cas. 235.

The power and discretion of the legislature to control and regulate the subject of hunting game is not limited by the organic law, and the subject regulated may be as restricted in manner and extent as the legislature deems advisable; but the regulations should affect alike all persons similarly situated and conditioned with reference to the particular regulations. Classifications of persons may be made in connection with the regulations, but such classifications should have some just relation to real difference to the subject regulated, and should not be unjustly discriminatory or merely arbitrary. If this rule is not observed, classifications of persons in connection with the regulation of the hunting of game may deny to some residents of the State the equal protection of the laws.

While there may be no absolute private property right in game in its natural condition, and while the State may by statute regulate the use of game in any manner and to any extent desired by the lawmaking power, yet the beneficial use of the game in the State belongs to all the people of the State, and a regulation that unjustly discriminates against any of the people of the State may in effect be a denial of the equal protection of the laws to those so un-

justly discriminated against. The legislature in protecting game may in its discretion limit a statute in the extent and purpose of its operation, but the regulation must operate upon all persons alike under practically similar conditions and circumstances. The discretion of the legislature in classifying those who are to be affected by a regulation for the protection of game will not be disturbed by the courts where the classification has some just, fair and practical basis in real differences with reference to the subject regulated and all doubts will be resolved in favor of the validity of a statute. But when a statute designed for the protection of game, by its plain terms excludes from its benefits a portion of the residents of the State, or imposes upon some of the residents of the State burdens not put upon other residents of the State with references to the subject regulated, and there appear to be no real differences in conditions with reference to the regulation to fairly justify the classification as made, the statute may in effect deny to residents of the State the equal protection of the laws in violation of the fourteenth amendment of the Federal Constitution. Harper v. Galloway, 58 Fla. 255, 51 South. Rep. 226, 26 L. R. A. (N.S.) 794, 19 Ann. Cas. 235.

In State *ex rel.* Clarkson v. Phillips, 70 Fla. 341, text 356, 70 South. Rep. 367, Ann. Cas. 1918A 138, it is said: "The purported vesting of the ownership and title to all wild birds and game in the State in the respective counties, may be unimportant in so far as the bare legal title is concerned, if the provisions of the act 'regulating the use and disposition of the same,' do not in effect materially impair the rights of 'all the people of the State' therein."

The State Constitution provides that "All men are equal before the law," and the Federal Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."

The organic declaration that ''all men are equal before the law'' may be regarded as a guarantee that all persons shall have equal consideration and protection of the law for the maintenance and security of the rights to which they are legally entitled. Noble v. State, 68 Fla. 1, 66 South. Rep. 153.

The constitutional right of equal protection of the laws means that every one is entitled to stand before the law on equal terms with, to enjoy the same rights as belong to, and to bear the same burdens as are imposed upon others in a like situation.

Equal protection of the laws means subjection to equal laws applying alike to all in the same situation. Southern Ry. Co. v. Greene, 216 U. S. 400, 30 Sup. Ct. Rep. 287.

All the *bona fide* citizens of the State irrespective of the counties in which they live, have a qualified beneficial property interest, subject to lawful governmental regulations for the public good, in all wild game while it is in any county of the State and not reduced to the lawful possession of any one; and as the State cannot lawfully deny to any of its citizens substantially equal rights with all other citizens of the State under like conditions, to lawfully hunt wild game in the State, the vesting of title to such game in the several counties is ineffectual to impair individual rights in the game or to relieve the State of the power and duty of just regulations for the good of all.

Classifications by counties or otherwise for the purpose of prescribing regulations or exactions that in effect impose burdens on some of the citizens of the State that in kind or extent are not imposed upon other citizens of the State under practically similar conditions, with no conceivably just basis for the classifications or discriminations, constitute a denial to those injuriously affected of the equal protection of the laws in violation of the Fourteenth Amendment to

the Federal Constitution. Harper v .Galloway, 58 Fla. 255, 51 South. Rep. 226; State *ex rel.* Clarkson v. Phillips, 70 Fla. 340, 70 South. Rep. 367; Lewis v. State, 110 Ark. 204, 161 S. W. Rep. 154; State v. Hill, 98 Miss. 142, 53 South. Rep. 411; 27 C. J. 947; 12 R. C. L. 694.

In State *ex rel.* Clarkson v. Phillips, 70 Fla. 340, 70 South. Rep. 367, it was held that a statute requiring a license tax of $3.00 of citizens of the State who hunt wild game in a county other than that of their residence, while $1.00 license tax was required of citizens who hunt in the county of their residence, was not clearly unreasonable and arbitrary in view of the burdens that are borne by the counties where game is hunted by non-residents, in which burdens non-residents of the county do not usually share. There the difference in the license taxes was not relatively unduly great or unreasonably burdensome. In these cases the license taxes are $10.00 and $50.00 respectively for hunting in a county other than that of residence, while only $1.00 and $1.25 is required to be paid in the county of residence; and it may fairly be said that such great differences in the tax has no basis in added burdens to the counties where the game is hunted or in any other reasonable and practical considerations that justify such differences with reference to the rights that all the citizens of the State have in the wild game found in any county of the State. The necessary result is that the provisions of the special or local laws requiring the $10.00 and $50.00 license taxes of non-residents of the respective counties as a prerequisite to permissible hunting of wild game in such counties within the proper seasons, are violative of the relators' organic rights to equal protection of the laws in the enjoyment of a right to lawfully hunt wild game in the State, which the relators have in common with all the citizens of the State. Such special or local statutory provisions being

in conflict with organic law, are inoperative, and the relators are entitled to licenses upon complying with the general law regulating the subject.

The motions respectively made to quash the alternative writs of mandamus are denied and an appropriate peremptory writ of mandamus will issue in each case.

It is so ordered.

TAYLOR, C. J., AND BROWNE AND TERRELL, J. J., concur.

ELLIS AND WEST, J. J., dissen.t