R. L. DOWLING, as State Supervisor of Conservation, *et al.*, v. W. R. HODGES & SON, etc., *et al.*

179 So. 702.
Division A.
Opinion Filed March 4, 1938.

*Cary D. Landis,* Attorney General, and *Marvin C. McIntosh* and *Tyrus A. Norwood,* Assistant Attorneys General, for Appellants;

*Scruggs & Sobol,* for Appellees.

PER CURIAM.—The appeal brings for review temporary restraining orders, the first of which, in material parts, is as follows:

"Whereas, it has been represented to this Court in a certain sworn bill of complaint in the above entitled cause exhibited and on file herein that you, and each of you, among other things, are contriving and confederating to injure the plaintiffs, touching matters set forth in the bill of complaint aforesaid, and that your actions and doings are contrary to equity and good conscience; and the Hon. E. C. Love, one of the Judges of this Court having ordered that an Injunction Writ and Temporary Restraining Order issue out of this aforesaid Court according to the prayer of said bill of complaint, now, therefore, in consideration thereof and of the particular matters set forth in said bill of complaint,

"You, R. L. Dowling, as Supervisor of Conservation of the State of Florida, and all employees, agents, deputies and wardens of the Department of Conservation of the State of Florida are herein and hereby enjoined and restrained from arresting, interfering with, molesting or hindering the said W. R. Hodges & Son, a co-partnership consisting of W. R. Hodges and W. R. Hodges, Jr., and Earl

Campbell in any way in and about their business of taking, possessing, selling, exchanging or transporting mullet caught in compliance with Chapter 17934, Laws of Florida, Acts of 1937, until the further Order of this Court."

And the other of which is as follows:

"IT IS FURTHER ORDERED that said temporary injunction heretofore issued be modified so as to restrain the said defendant from arresting, interfering with or hindering the said plaintiffs in any way in and about the business of taking and possessing mullet in compliance with Chapter 17934, Acts of 1937, of the Laws of Florida, until the further order of the court and that so much of said order as enjoins the defendant from arresting, interfering with or hindering the plaintiffs in the business of selling, exchanging or transporting for commercial purposes such mullet, be and the same is vacated and set aside."

The Legislature of 1937 passed House Bill No. 1839 which became Chapter 17934, Special Acts of 1937. The title of the Act was as follows:

"AN ACT Regulating the Taking of Mullet in the Counties of the State of Florida Bordering on the Gulf of Mexico and Lying North of the Withlacoochee River and South of the Suwannee River; Providing an Open Season for the Taking of Mullet in Such Counties; Providing the Manner in which Mullet may be Taken in such Counties and Defining the Nets which may be Used in Taking the Mullet in the Counties Affected by this Law; Repealing Conflicting Laws and Providing Penalties for the Violation of this Act."

Sections 1, 2, 3 and 4 provide as follows:

"Section 1. The salt water fish commonly known as mullet are migratory fish seasonally moving along the Coast of the State of Florida and because the coastal area included

within the provisions of Act is affected by similar condition concerning the occurrence and taking of mullet in said area should be uniform.

"Section 2. It shall be lawful to take from the waters of the Gulf of Mexico and its tributaries in any of counties of the State of Florida north of the Withlacoochee River and south of the Suwannee River, any mullet of any size between the first day of December of any year and the twentieth day of January of the next succeeding year.

"Section 3. It shall be lawful to take mullet in the waters in the Gulf of Mexico or its tributaries in the counties of the State of Florida lying north of the Withlacoochee River and south of the Suwannee River, with gill nets having a mesh not less than three (3) inches stretched or not less than one and one-half (1½) inches from bar to bar.

"Section 4. It shall be lawful to take, possess, sell, exchange, or transport mullet caught in any of the counties of the State of Florida bordering on the Gulf of Mexico and lying north of the Withlacoochee River and south of the Suwannee River, at any time; Provided such mullet so taken, possessed, sold, exchanged, or transported shall not be less than ten (10) inches from the tip of the nose to the tip of the tail."

These sections are involved in this proceeding.

The record shows that the Act was treated as a local Special Act when introduced and passed by the Legislature and was compiled as a General Law in the compilation of the Acts passed by the legislative session of 1937.

The Court must take judicial cognizance of the fact that there is but one county bordering on the Gulf of Mexico and lying north of the Withlacoochee River and south of the Suwannee River, which is the County of Levy. It, therefore, follows that the Act was, and is, a Special and local Act affecting only territory within the jurisdiction of

Florida lying in Levy County. Therefore, for the Act to be a valid legislative enactment, it was necessary that the provisions of Section 21, Article III of the Constitution of Florida be complied with regarding its passage. This Section of the Constitution requires that "No local or special bill shall be passed unless notice of the intention to apply therefor shall have been published in the locality where the matter or thing to be affected may be situated, which notice shall state the substance of the contemplated law and shall be published at least thirty (30) days prior to the introduction in the 'Legislature of such bill and in the manner to be provided by law. The evidence that such notice has been published shall be established in the Legislature before such bill shall be passed by having affidavit of proof of publication attached to the proposed bill when the same is introduced in either branch of the Legislature and each such affidavit constituting proof of publication shall be entered in full upon the journals of the Senate and of the House of Representatives, which entries shall immediately follow the Journal entry showing the introduction of the bill." The section further provides that the publication shall not be required if the law contains the provision to the effect that the same shall not become operative or effective until the same has been ratified or approved by a majority of the qualified electors participating in an election called in the territory affected by said Special or local law.

Examination of the respective Journals of the Senate and the House of Representatives show that no proof of publication of notice as required under the above mentioned provisions of the Constitution was entered upon the Journals of either the House of Representatives or the Senate. The bill itself did not provide that it should only become effective upon being approved at a referendum election.

It is the contention of the appellees that the Supervisor of Conservation of the State of Florida could not disregard the legislative Act in question and proceed under the law as it existed unaffected by that Act, upon the theory of legal principles enunciated in the case of State, *ex rel.* A. C. L. Railroad Co., v. State Board of Equalizers, 84 Fla. 592, 94 Sou. 681, 30 A. L. R. 392, which may be stated briefly as follows:

"The contention that the oath of a public official requiring him to obey the Constitution places upon him the duty or obligation to determine whether an Act is constitutional before he will obey it is, I think, without merit. The fallacy in it is that every Act of the Legislature is presumptively constitutional until judicially declared otherwise, and the oath of office 'to obey the Constitution' means to obey the Constitution, not as the officer decides, but as judicially determined."

"The right to declare an Act unconstitutional is purely a judicial power and cannot be exercised by the officers of the executive department under the guise of the observance of their oath of office to support the Constitution."

This enunciation has been adhered to in the following cases: "Davis etc. v. Crawford, etc., 95 Fla. 438, 116 So. 41; McSween v. State Board, etc., 97 Fla. 749, 122 So. 239; State, etc., v. Love. Judge, 99 Fla. 333, 126 So. 374; State, etc., v. Board, etc., 103 Fla. 946, 138 So. 625; State, *ex rel.* Gillespie v. Thursby, 104 Fla. 103, 139 So. 372; State, *ex rel.* Howarth, v. Jordan, 105 Fla. 322, 140 So. 908."

The enunciations promulgated in those cases are applicable to Acts where an adjudication by courts may be necessary to determine the validity of such Acts; that is, where there is any justiciable question to be determined by the court. But, that is not the case here.

Everybody is bound by the records and the records show that House Bill No. 1839 never became a legislative Act in contemplation of the Constitution. It never became a law because the constitutional prerequisites as to its introduction and passage by the Legislature were never complied with. It amounts to no more in law than if it had been passed by what is commonly known as the Third House and then, by inadvertence or otherwise, had been included in the compilation of legislative Acts.

Special Acts of the Legislature passed in accordance with the Constitution regulating the taking of fish and game in special or local areas have been consistently upheld when enacted in accordance with the provisions of the Constitution.

This Act having never become a law, it is not necessary for us to discuss whether or not the title is broad enough to warrant the inclusion of some of the provisions which appear in the body of the document.

For the reason stated, the order appealed from must be reversed and the cause remanded with directions that the bill of complaint be dismissed.

It is so ordered.

Ellis, C. J., and Terrell and Buford, J. J., concur.

Whitfield, P. J., and Brown and Chapman, J. J., concur in the opinion and judgment.