SPESSARD L. HOLLAND, as Governor, et al., v. JOE ROBERTS.

5 So. (2nd) 608                                    En Banc
January 16, 1942

J. Tom Watson, Attorney General, and Thomas V. Kiernan, Assistant Attorney General, for Petitioners.

Booth & Dickenson, for respondent.

BUFORD, J.:

We are petitioned to review on certiorari under our Rule 34 an order denying motion to dismiss and granting temporary restraining order, as follows:

"It Is Further Ordered, Adjudged and Decreed that pending further order of this Court the defendants and each of them and their agents, servants and employees be and they are hereby enjoined and restrained from enforcing the provisions of Section 2 of Chapter 10123 of the Laws of Florida, 1925, being Section 1861, Compiled General Laws of Florida, 1927 Ed., insofar as the same relates to the salt waters of Pinellas County, Florida."

Joe Roberts exhibited his bill of complaint in the Circuit Court of Pinellas County against "Spessard L. Holland, Governor of the State of Florida; R. A. Gray, Secretary of State of the State of Florida; J. Tom Watson, Attorney General of the State of Florida; J. M. Lee as Comptroller of the State of Florida; J. Edwin Larson as Treasurer of the State of Florida; Colin English as Supervisor of Public Instruction of the State of Florida, and Nathan Mayo as Commissioner of Agriculture of the State of Florida, as and constituting the State Board of Conservation of the State of Florida, and S. E. Rice as Supervisor of Conservation of the State of Florida."

The bill of complaint alleges:

"II. That in 1925 the Legislature of the State of Florida passed Chapter 10123, Laws of Florida, being:

" 'An Act to Protect and Regulate the Salt Water Fishing Industry in the State of Florida, and to Declare Certain Fresh Waters in this State Salt Water for the purpose of this Act and to Define Certain Waters as Salt Waters.'

"That among the sections of this Act is Section 2 which reads as follows:

" 'That from and after the passage of this Act it shall be unlawful for any person, persons, firm or corporation to take, have in his or their possession, buy, sell, offer for sale or ship any fresh or freshly salted mullet or mullet roe, in this State between the first day of December of any year and the twentieth day of January of the next succeeding year. The possession of any fresh or freshly salted mullet, or any fresh or freshly-salted mullet roe, by any person, persons, firm or corporation, during the closed season shall be prima facie evidence of the violation of this Act. Provided, however, that anyone having any fresh or unsplit mullet, or roe on hand at the beginning of the closed season may have five days in which to dispose of same.'

"That this Act also provided in Section 14 that:

" 'Anyone violating any of the provisions of this Act shall be fined in the sum of not exceeding six hundred dollars ($600), or by imprisonment not exceeding one year, or by both such fine and imprisonment.'

"That Section 2 of this Act, hereinbefore described, is known as Section 1861, Compiled General Laws of Florida, 1927 Edition.

"III. Your complainant avers that this Act is unconstitutional if now enforced and is violative of

Sections 20 and 21 of Article III of the Florida Constitution, which provides as follows:

"Sec. 20: 'The legislature shall not pass special or local laws in any of the following enumerated cases: that is to say, regulating the jurisdiction and duties of any class of officers, except municipal officers, or for the punishment of crime or misdemeanor; regulating the practice of courts of justice except municipal courts; providing or changing venue of civil and criminal cases; granting divorces; changing the names of persons; vacating roads; summoning and empanelling grand and petit juries, and providing for their compensation; for assessment and collection of taxes for State and county purposes; for opening and conducting elections for State and county officers, and for designating the places of voting; for the sale of real estate belonging to minors, estate of descendents, and of persons laboring under legal disabilities; regulating the fees of officers of the State and county; giving effect to informal or invalid deeds or wills; legitimizing children; providing for the adoption of children; relieving minors from legal disabilities; and for the establishment of ferries.'

"Sec. 21. 'In all cases enumerated in the preceding section all laws shall be general and of uniform operation throughout the State, but in all cases not enumerated or excepted in that section, the Legislature may pass special or local laws; Provided, that no local or special bill shall be passed, unless notice of the intention to apply therefor shall have been published in the locality where the matter or the thing to be effected may be situated, which notice shall state the substance of the contemplating law, and shall be published at least sixty days prior to the introduction, into the

Legislature of such bill, and in the manner to be provided by law. The evidence that such notice has been published shall be established in the Legislature before such bill shall be passed.'

"Particularly in this said Chapter at the present time violative of Section 21 of Article III aforesaid, for the reason that by subsequent actions of the Legislature exempting certain counties from the application of this Act the same has been made local in its application, while it may be general in its scope, nevertheless the Legislature, from 1925 through 1941 has exempted fifteen (15) counties on the West Coast of Florida, bordering the Gulf of Mexico, from the provisions of this Act, leaving only eight (8) counties, of which Pinellas County is one, covered by this Act.

"IV. Your complainant would further respectfully show unto this Honorable Court that this Act is discriminatory as presently constituted and enforced, and violative of Section 1 of the Florida Constitution, which provides as follows:

" 'Section 1. All men are equal before the law, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring and possessing and protecting property, and pursuing happiness and obtaining safety.'—as well as Section 12, of the Florida Constitution which provides as follows:

" 'No person shall . . . be deprived of life, liberty, or property without due process of law; . . .'

"V. Your complainant would further respectfully show unto this Honorable Court that said Act is discriminatory against him and violative of Section 1 of

the Fourteenth Amendment to the Constitution of the United States, which provides:

" 'Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No state shall make or enforce any law which shall abridge the privileges of immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.'

"VI. Your complainant would further respectfully show unto this Honorable Court that by reason of the subsequent Acts of the Legislature of Florida, particularly the action of the 1941 Legislature in passing local legislation exempting the six (6) counties immediately to the North of Pinellas County, thereby adding to those already exempted, making a total of fifteen (15), so that now all counties bordering on the Gulf of Mexico, North of Pinellas County, are now exempt from the provisions of this Act and have no closed season on salt water mullet; that Pinellas County, Florida, is one of the eight (8) remaining counties to the south, which have a closed season under the Act, if the same is declared valid and enforced. In other words, from Pasco County, North to the Alabama line, there is an open season on salt water mullet from December first to January twentieth, and from Pasco County line, South, there is a closed season thereon.

"VII. Complainant would further respectfully show unto this Honorable Court that salt water mullet are a migratory fish and migrate seasonally along the coast,

and at this season of the year migrate to the north; that at this particular period of the year your complainant catches in his nets salt water mullet, bottom, fish, red fish and trout; that approximately sixty per cent (60%) of his catch are salt water mullet, which he is now forced, under the Act to turn loose; that this, therefore, cuts down his income considerably and deprives him of his right to earn a livelihood; that there are approximately three hundred (300) fishermen in the same position that he is, solely dependent upon what they earn from their fishing; that these fishermen all have families who are also dependent upon them and that the Conservation Department has advised these fishermen that they must enforce this Act in the waters of Pinellas County, Florida, unless restrained by an order of this Court; that if they so enforce the same, even though the Act be valid, such enforcement is discriminatory against your complainant and others similarly situated, and violates Sections 1 and 12 of the Florida Constitution and Section 1 of the Fourteenth Amendment of the United States Constitution, because it permits the fishermen of the adjoining county, and for that matter all of the counties immediately to the north of Pinellas County, to catch salt water mullet, while your complainant in Pinellas County, and those seven (7) counties immediately to the south, are denied the opportunity to so earn a livelihood.

"VIII. Your complainant would further respectfully show unto this Honorable Court that one of the borders of Pinellas County is the Anclote River to the north; that this is also the southern border of Pasco County; that by House Bill No. 1569, issued May 26, 1941, and passed as purely a local bill by the House of

Representatives and by the State of Florida at their 1941 session, a copy of which Bill is hereto attached and made a part hereof and marked 'Exhibit A,' it was legal to catch salt water fish of all kinds from the salt waters of Pasco County, Florida, during this particular period of time in question; that therefore this discriminates against fishermen in this section of the state, in favor of the fishermen from Pasco County, because fishermen from Pasco County can fish in their half of the Anclote River, while the fishermen from Pinellas County cannot fish in their half of the River; that such salt water mullet, being a migratory fish, are all over the waters of Pinellas County, including the Anclote River; that the particular effect of the enforcement of this closed season Act in Pinellas County is that the salt water mullet feed here and migrate north to the counties immediately to the north of this county, where they are permitted to be caught and sold, thus discriminating against your complainant and others similarly situated in this county, and violating his constitutional rights as aforesaid.

"IX.  Your complainant would further respectfully show unto this Honorable Court that the theory of this Act, as passed, was a conservation measure and purely a conservation measure, but your complainant avers that salt water mullet do not spawn in the bays, shoals and salt waters of Pinellas County, Florida, but in truth and fact spawn in the deep waters of the Gulf of Mexico, over the rocks, so that there is no practical need of this closed season anywhere in the State for the purpose of permitting the salt water mullet to spawn.

"X. Your complainant would further respectfully show unto this Honorable Court that if this Act is enforced by the Department, he and others similarly situated, will suffer irreparable damage and injury, because it will deprive them of their right to earn a livelihood; that it will deprive them of over sixty per cent (60%) of their income because they will have to turn loose what salt water mullet they catch; that they have no other means of earning a livelihood other than by fishing, that said Act, if enforced as the Department says that they intend to enforce it, is arbitrary and unreasonable, and discriminatory, because there is no reasonable or logical basis or reason for dividing the Gulf Coast counties of the State of Florida into the fifteen (15) immediately to the north of Pinellas County, having an open season at this period of the year, and the seven (7) immediately to the south, having a closed season. In other words, the Gulf Coast of Florida is arbitrarily divided by the Legislature in its subsequent actions into fifteen (15) counties having an open season, and eight (8) counties having a closed season; that there is no logical reason or basis for this division and that by the subsequent actions of the Legislature of Florida in exempting these fifteen (15) counties, it has practically nullified this Chapter 10123, Acts of 1925, as a General Act, and made it purely local in its application; that said Act was not advertised in Pinellas County or in any of the counties to the south, therefore is a local Act, and therefore is void and unconstitutional.

"XI. Your complainant would further respectfully show unto this Honorable Court that it is inequitable and unjust for him and others similarly situated in Pinellas County, to be faced with the enforcement of

this Act closing the season for salt water mullet, when those immediately to the north of him, similarly situated, to which counties the salt water mullet migrate at this season of the year, have an open season thereon; that it is also inequitable and unjust if enforced, because your complainant will be deprived of a great source of his livelihood; that if enforced it will be discriminatory against him and others similarly situated; in favor of those immediately to the north of the fifteen (15) counties involved, as against himself and the others in the seven (7) counties to the south of him.

"Your complainant therefore charges that said Act is not only unconstitutional and void for the reasons heretofore stated but that its enforcement at this time would be likewise unconstitutional and void, and discriminatory for the reasons hereinbefore stated."

We have quoted these allegations of the bill of complaint because therein is found the entire basis and theory of plaintiff's claim of right to relief prayed.

The rationale of the complaint is that while the general law, Chapter 10123, Acts of 1925, was valid at the time of its enactment, it has become unconstitutional and void in its present application to citizens of Pinellas County by reason of the enactment of Special Statutes affecting counties north and northwest of Pinellas County.

There is no contention that any citizen of Pinellas County, or of any other county of the State, may not lawfully take mullet fish from the waters of any of those counties as to which the legislature has repealed the ban by closed season, which ban was effectuated by Chapter 10123, supra. Therefore what was said by us in the case of Harper v. Galloway, 58 Fla. 225,

51 Sou. 226, or in the case of State v. Bryan, 87 Fla. 56, 99 Sou. 327, has no application here.

In the Acts here under consideration there appears no discrimination between persons, but only a difference between the rights of all persons alike as to the affected areas.

What was said by us in the case of Atlantic Coast Line Ry. v. Ivey, filed December 2, 1941, has no application here because in that case we were dealing not with areas but with burdens which were required to be carried by one common carrier and not by another operating the same class of business in the same area.

If the contention of the plaintiff is tenable, then when the first local Act was passed excluding a single county from the operation of the general closed season law, the local Act had the effect of nullifying the entire general Act. If the passage of the first local Act did not nullify the General Act, then we ask which local Act effectuated the nullification: Did it require, two, three, six, nine or just what number of local Acts to effectuate such nullification?

We have repeatedly held local closed season Acts valid. See Harper v. Galloway, supra; State v. Bryan, 87 Fla. 56, 99 Sou. 327; State v. Philips, 70 Fla. 340, 70 Sou. 367; Snowden v. Brown, 60 Fla. 212, 53 Sou. 548; Stinson v. State, 63 Fla. 42, 58 Sou. 722; Ex Parte Lewis, 101 Fla. 624, 135 Sou. 147; Dowling v. Hodges & Son, 131 Fla. 672, 179 Sou. 702; State v. Stoutamire, 131 Fla. 698, 179 Sou. 730.

In the Dowling case, supra, the Act under consideration was held invalid because it had not been enacted by the Legislature in compliance with Sec. 21, Article III of the Constitution.

The Act under consideration in the Stoutamire case was also held invalid because of lack of compliance with the Constitution, supra, but in both of these cases the power of the Legislature to prohibit fishing in certain waters was recognized.

In the case of Oglesby v. Hand, 96 Fla. 799, 119 Sou. 376, we said:

"It is contended that the Act is bad because while it purports to be a general law it contains provisions that are local in character and application; that it is discriminatory and unreasonable, destroying uniformity of application and attempts to delegate legislative powers to the three different agencies: The State Game Commissioner, The Wild Life Conservation Commission and the Department of Game and Fresh Water Fish.

"The Department of Game and Fresh Water Fish and The State Game Commissioner constitutes one and the same agency with all the functions, powers and emoluments in the latter. The Wild Life Conservation Commission is brought into existence by Sec. 4 of the Act. It consists of one person from each congressional district. They serve without compensation and their qualifications are to 'have intimate knowledge of wild life.' The phrase presumably refers to fish and game habits and habitat. The powers of the Commission seem to be advisory only.

"Sec. 1 of the Act defines Fresh Water to be all lakes, rivers, and canals, and creeks and other fresh waters up to the 'mouths' of such waters where they empty into salt water or where signs are placed by the State Game Commissioner marking the mouth of the river. Lake Okeechobee; The St. Johns River from its mouth as far south as Volusia Bar, including

Doctors Lake and Lake George; Carrabelle and New Rivers in Franklin County; The Suwannee River as the forks forming the east and west passes and the Wacasassa River as far north as the mouth of Cow Creek are excepted from the lakes and rivers defined to be fresh waters.

"Sec. 25 makes it unlawful to take or attempt to take any fresh water fish from the fresh waters of the State by means of any device except hook and line, rod and reel, bob, spinner or troll, unless specifically permitted by the Act. The section then proceeds to make special provision for the use of other means for catching certain kinds of fish in the Apalachicola and Chattahoochee rivers, for the catching of sturgeon during certain months, and shad in St. Mary's river during the open season and for the catching of shad, mullet and suckers during the open season with nets on permits to be issued by the State Game Commissioner. It also makes provision for the use of nets of certain lengths and mesh size, or such as the State Game Commissioner may prescribe in Lake Kissimmee, Lake Jackson, Lake Marion, Lake Lizzie, Lake Alligator in Osceola County, Lake Ocheesee in Jackson County and Alapaha river in Hamilton County during the open season.

"Sec. 35 prescribes the open season for fresh water fish but the provisions of the Act do not apply to the waters named as exceptions in the first section. Several sections of the Act dealing with the taking of fresh water fish and the transportation and sale of them, exclude certain fresh waters of the State from its provisions. So that fishing in such waters during the open season, or at other times, is not regulated by the provisions of the Act except in those instances

where the State Game Commissioner may prescribe the size of the mesh and length of net to be used.

"It is argued that on account of these and like provisions discriminations are made against persons living in different sections of the State who desire to engage in fishing as a business and whose supply of fish is in the waters not excluded by Sec. 1 and other sections; that petitioner is one of such persons discriminated against and is competent to raise the point.

"Assuming that the exclusion of certain fresh water lakes and rivers from all others in the State to which the provisions of the Act do apply is a classification of waters as to fishing rights, it operates as no discrimination against persons. And it is entirely within the range of legislative discretion that conditions exist in the location of the waters excluded and the waters themselves which make it advisable within legislative wisdom to exclude them from the provisions of the Act. Such is the doctrine held in State ex rel. Clarkson v. Phillips, 70 Fla. 340, 70 So. R. 367; Harper v. Galloway, 58 Fla. 255, 51 So. Rep. 226."

If an Act closing the spawning season for fishing in one county is valid then we are unable to conjure any reason why the Act here under consideration is not valid as to those counties which have not by legislative Act been excluded from its provisions.

If we may be said to entertain sympathies, ours is with the fishermen, but what is best for their benefit in regard to the fishing industry is a matter for legislative consideration and action.

The Legislature saw fit to fix, by general law, a closed season for the catching of mullet in this State. It later opened some counties so that the closed season

does not obtain therein. If either action by the Legislature was unwise, it is not for us to say.

We find no violation of our Constitution to the application of Chapter 10123, supra, as to those counties which have not been eliminated from its purview by subsequent legislative Acts.

So the writ of certiorari is granted and the challenged order is quashed with directions to dismiss the bill of complaint.

So ordered.

CHAPMAN, THOMAS and ADAMS, JJ., concur.

BROWN, C. J., and TERRELL, J., dissent.

BROWN, C. J., dissenting:

On the facts as alleged in the bill, I think the chancellor below was justified in denying the motion to dismiss, and also in granting the temporary restraining order. My view is that the statutes complained of deny the equal protection of the laws when construed in the light of the facts as alleged in the bill. And the Constitution guarantees the equal protection of the laws.

TERRELL, J., dissenting:

I do not agree with the judgment of the majority of the Court as prepared by Mr. Justice Buford, or the theory upon which it was reached. The bill of complaint shows that the Legislature of 1925 enacted Chapter 10123, Section 2 of which regulates the sale and taking mullet from the salt waters of the State of Florida. It imposes a closed season in every county from the first day of December to the twentieth day of January, during which a penalty is imposed for violating the Act.

It is further shown that between the years 1925 and 1941, the Legislature has by local Act exempted every county in the State to the north of Pinellas (fifteen) from the provisions of the closed season and that now fishermen in those counties can take and sell mullet the year round, while Pinellas and the counties to the south (eight) are bound by the closed season.

It is shown that respondent is a salt water fisherman residing in Pinellas County, that normally sixty per cent of his catch is mullet which he is required to release during the closed season, that the mullet is a migratory fish and that since fishermen in counties adjacent to and to the north of Pinellas are not required to observe the closed season but may take mullet the year round, the law now imposes a condition on respondent not imposed on others engaged in the same business under like conditions which is unreasonable, arbitrary, and contrary to due process and equal protection.

This Court has recognized the mullet to be a fish that seasonably migrates along the coast. Dowling, et al., v. Hodges and Son, et al., 131 Fla. 672, 179 So. 702. It is common knowledge that the salt water fishing industry is one of the leading businesses in the coastal counties of the State at which hundreds of fishermen make their living, and that mullet is the principal product of the industry. The mullet is to the southeastern sector of the country what the cod is to the northeastern sector and the salmon is to the northwestern sector. The real fundamental difference between the Southeasterner and the New Englander is not in political and social philosophy but the difference between mullet and "tater" and cod and "tater." The school boy in the south who was not privileged

to imbibe his vitamins from mullet and "tater" would be as underprivileged as the school boy of New England who was not privileged to imbibe his from cod and "tater." It would be as disastrous to some industries in Florida to extract mullet from the bill of fare as it would to Boston and Beacon Hill to extract cod from the bill of fare in Massachusetts. The effect of the legislation drawn in question is to destroy the business of the Pinellas fisherman for the closed season each year or force him to go to other counties to ply his trade where he would be received as fervently as a hillbilly would be at a debutante's coming out party.

I think it would be competent for the Legislature to classify the coastal counties for the purpose of varying or staggering the closed season provided that there existed a reasonable basis for the classification and all in the same class were treated alike and all classes ultimately enjoyed similar privileges but it is not competent to impose a privilege on one class and deny it to others in the same business.

Equal protection of the law as applied to this case means that the law affecting the taking of salt water fish bears on all similarly situated alike and that all in the same situation bear the same burdens. This cannot be when the statute defining the closed season for taking mullet imposes on some of the fishermen burdens not imposed on other fishermen in reference to the subject regulated. Harper v. Galloway, 58 Fla. 255, 51 So. 226; State ex rel. Spence v. Bryan, 87 Fla. 56, 99 So. 327.

The right to take fish from the salt waters of the State is one common to all and may be regulated in the interest of all but such regulations must affect all

alike or as near as can be and will not be permitted to discriminate as between different counties or grant exclusive rights to one county or counties that are denied to others in like situation. This is not a case where certain waters have been closed against all fishing indefinitely or for a defined season, but one the effect of which is to discriminate between those engaged in the same business without any basis for the discrimination. It also ignores the economics of the business. A fisherman builds a trade and good will from the place he sells his product. A Pinellas County fisherman limited by a closed season is placed at a decided disadvantage in this when his competitor in the next county or across the river is not so bound.

I think the writ of certiorari should be denied and the judgment appealed from affirmed.